IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARK DOBRONSKI, individually and on behalf of a class of all persons and entities similarly situated,<br><br>      Plaintiff<br><br>vs.<br><br>CREDIT SWAG VENTURES, INC. DBA CREDIT & DEBT<br><br>and<br><br>DENISE OROZCO<br><br>      Defendant. | Case No. 4:25-cv-11777-FKB-EAS |

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. However, the TCPA doesn't only restrict robocalls.

3.     "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.     "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA

affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. Plaintiff Mark Dobronski ("Plaintiff") brings this action under the TCPA alleging that Credit Swag Ventures Inc. DBA Credit & Debit, and its employee, Denise Orozco, ("Defendants") called the Plaintiff, whose number is on the National Do Not Call Registry, including some calls which utilized highly-illegal prerecorded messages. Those calls were made without the call recipient's prior express written consent.

6. Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

8. Plaintiff Mark Dobronski is a person.

9. Defendant Credit Swag Ventures, Inc. DBA Credit & Debt is a for-profit company that provides debt relief services, credit management services and sells various sorts of personal loans, including debt consolidation loans.

10. Denise Orozco is an employee of Defendant Credit & Debt that was physically and individually involved in one of the calls at issue.

### Jurisdiction & Venue

11. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiff and the putative class that are the subject of the litigation were sent into this District and to encourage the purchase of services to be provided in this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

## The Telephone Consumer Protection Act

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

15. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

16. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Prerecorded Calls to Residential Lines

17. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

18. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes." 47 U.S.C. § 227(b)(1)(B).

19. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

20. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

<u>The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.</u>

21. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

22. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

23. The regulations also require any caller identification information to "include either CPN or ANI" and "permit any individual to make a do-not-call request during regular business hours." *Id.*

24. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

25. This Court recently confirmed that there is a private right of action for violations of this provision. *Id.*; *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *7-*8 (E.D. Mich. Aug. 21, 2025).

**Factual Allegations**

26. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

27. Defendant Credit & Debt is a seller of various credit services, debt relief services and loan products, for which it uses employees like Defendant Orozco.

28. To generate business, the Defendants place illegal telemarketing calls to numbers on the National Do Not Call Registry, including using highly-illegal prerecorded calls.

29. Mr. Dobronski's residential telephone number, (734) XXX-XXX, is a residential non-commercial telephone number.

30. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

31. The telephone number is Mr. Dobronski's traditional residential landline.

6

32. The telephone number is registered in Mr. Dobronski's name and at his residential address. Mr. Dobronski pays for the number out of his own personal funds.

33. The telephone number is the primary means of reaching Mr. Dobronski at his residence.

34. Mr. Dobronski uses the number for personal, residential, and household reasons.

35. Mr. Dobronski's telephone number has been listed on the National Do Not Call Registry since he personally registered it there on June 29, 2003, nearly twenty-two years prior to the Defendants' calls.

36. Plaintiff has never been a customer of the Defendants, never did business with the Defendants, nor asked or inquired to be a customer of the Defendants.

37. Plaintiff never consented to receive calls or text messages from the Defendants.

38. Despite that, on at least April 3, 2025, the Plaintiff received at least five calls from the Defendant Credit & Debt from various caller IDs, including "spoofed" or non-existent numbers, including 616-239-4728, 734-639-1093, and 734-520-2592.

39. Plaintiff also received multiple similar calls to the foregoing with identical or nearly identical voices, but different fake names, during this time.

40. At least one of the calls placed by the Defendant Credit & Debt to the Plaintiff used an artificial voice.

41. On April 3, 2025, the Plaintiff received a call from the Defendant Credit & Debt at 734-639-1093.

42. The caller identified itself as "Jessica" from the illegally and fictitiously named "Debt Relief Group."

7

43. The Plaintiff then intentionally responded in a vulgar manner so as to prove that "Jessica" was not a real person.

44. "Jessica" is Defendant Credit and Debt's robot.

45. "Jessica" was obviously an AI robot voiced by what was obviously a professional voice actor, or possibly a computerized text-to-speech with a clean, professional recording. When the Plaintiff answered the call, he said "Hello," "Jessica" said "Hello," paused for almost 5 seconds, and then repeated, "Hey!, This is Jessica from the Debt Relief Group. How are you doing today?"

46. "Jessica" disregarded the Plaintiff's vulgar response and stated "I got your information for debt settlement and it seems like you might be eligible for a program that could lower your debt. Do you currently owe more than ten thousand in debt?"

47. After the Plaintiff responded in a vulgar manner, the AI Robot simply continued with its scripted playback, which had an unnatural cadence and pauses between sentences. The robot displayed no emotion or any response or reaction to what was said, unlike a normal human.

48. No matter what the Plaintiff said, it appears the robot was simply programmed to immediately trigger a standardized transfer phrase, as follows, followed by a transfer to a live agent. This is a hallmark of a prerecorded voice and AI-driven call.

49. When the Plaintiff responded "yes," the caller stated, "ok, great. Now let me transfer your call to our verification department to discuss all of your available options, okay?"

50. At that point the call was transferred to an individual named "Jacob," who was obviously human, unlike "Jessica," the robot.

51. The Plaintiff then spoke to "Jacob" who stated he was from the "Debt Relief Group," another illegal and fictitious name for the Defendant used by its front-line "verification" (i.e. information collection) agents to avoid detection and ill will for their brand.

52. Indeed, such allegations are entirely consistent with the fact that the Defendants used illegally spoofed caller IDs that are not assigned to any customers.

53. "Jacob" then asked the Plaintiff a series of questions including whether he had any debt, how much debt, as well as demographic and contact information.

54. "Jacob" then stated he was going to transfer the call to the "debt specialist" who would assist the Plaintiff further and complete the process.

55. Defendant Denise Orozco then joined the line identifying herself as being from Credit & Debt.

56. Defendant Denise Orozco asked the Plaintiff even more questions about his debt status, demographic information along with personal information.

57. Defendant Denise Orozco already had the information the Plaintiff provided the robot and "Jacob," indicating that the calls were from the same place.

58. Knowing the Defendant's actions were illegal, the Plaintiff provided unique fake information so as to protect his identity.

59. When Defendant Denise Orozco looked up the fake social security number the Plaintiff provided, she informed the Plaintiff it was assigned to a deceased person, and that the Plaintiff would have to contact a credit bureau to get it resolved.

60. The Plaintiff then asked for Denise's full name and she responded with "Denise Orozoco."

61. When the Plaintiff began to press Defendant Denise Orozco about the illegality of the pre-recorded call from "Jessica" suddenly the call was disconnected and music began to play.

62. However, the Plaintiff subsequently received a "C&D Intro Email" from Defendant Credit and Debt and from Defendant Denise Orozoco, a redacted copy of which is attached herein as Exhibit A.

63. The Plaintiff then received a call back from Defendant Denise Orozoco directly at 616-239-4728.

64. This number is also a "spoofed" number and is not assigned to anyone.

65. The Plaintiff expressed his dissatisfaction with the previous call, he intended to file a lawsuit, and he would like a follow-up from Denise's supervisor.

66. After not hearing back from Denise's supervisor, the Plaintiff called the Defendant Credit and Debt and requested to speak to Defendant Denise Orozoco.

67. The Plaintiff was transferred to Defendant Denise Orozoco. Orozoco informed the Plaintiff that she had previously asked her supervisor to contact the Plaintiff and she was going to follow up with her supervisor again.

68. The supervisor then called from the spoofed caller ID 734-520-2592 to apologize to the Plaintiff and admitted to using a prerecorded voice.

69. The Plaintiff never provided his consent to receive any of the aforementioned calls, nor requested to receive any information for loans, as the Plaintiff has no need for such loans.

70. Upon information and belief, Defendant Credit & Debt uses bogus, fake names like "Debt Relief Group" for its front-line agents so that customers are more likely to stay on the call and provide their personal information in the hopes that they might become free of debt,

where the Defendant's employees like Defendant Denise Orozoco then makes the formal sales pitch for Defendant Credit & Debt's products.

71.   Like any efficiency-maximizing business, Defendant Credit & Debt uses automated technology to place the calls to as many people as possible and lower-paid information gathering employees like "Jacob" to collect personal information and gauge customer interest before transferring the call to a higher-paid and more valuable "closer" like Defendant Denise Orozoco.

72.   Moreover, it would be illogical for a legitimate company, let alone one who thought it had obtained legally requisite consent to contact potentially interested customers, to use fake names on the highly-illegal prerecorded calls like "Debt Relief Group" or engage in the highly illegal and completely unjustifiable practice of caller ID spoofing various random telephone numbers to telephone numbers which do not even exist, including from calls from Denise Orozoco her very self using a "spoofed" caller ID from an unassigned number. These actions further demonstrate that the calls were placed without consent.

73.   The initial prerecorded calls, the transfers to live agents, and the callback, were all Credit & Debt telemarketing interaction designed to induce purchase of Credit & Debt's services.

74.   The Defendant has a serious compliance problem.

75.   The aforementioned call on April 3, 2025 was placed using and beginning with prerecorded voice because: (a) the voice sounds as if it was scripted and recorded in advance with a professional voice actor, (b) the Plaintiff's response to the voice's initial greeting was vulgar and any human would not ignore it and continue on with the questions, and (c) when the Plaintiff was connected he spoke to Jacob and Denise, two obviously live individuals.

76. To be clear, the Plaintiff pleads a theory of direct liability as against Credit & Debt for all calls, because Credit & Debt, through its employees, directly placed such calls. As much is clear because the callers are the Defendant's employees, and Defendant Denise Orozoco, also Defendant's employee, sent the Plaintiff an email confirming her identity and employment with Defendant Credit & Debt.

77. The Plaintiff also pleads a theory of direct liability as against Defendant Denise Orozoco as she was personally involved in the placement of at least two of the calls.

78. Defendant Orozoco may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

79. Orozoco personally directed the TCPA-violative conduct at issue because she placed at least one of the calls directly, as well as being the ultimate individual to whom the call was transferred, and who personally attempted to sell the Plaintiff Defendant Credit & Debt's services, including via subsequent email, after being informed of the calls' illegal nature.

80. Moreover, Orozoco personally took responsibility for the calling conduct by promising the Plaintiff that she would forward the Plaintiff's complaints about the illegal calls to her supervisor.

81. The foregoing facts demonstrate that Orozoco had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

82. The calls all came from the following numbers, and transmitted the caller ID, in the form of both CPN and ANI as follows, which included "spoofed" numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM

information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendants' calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Avail? | CNAM Result | Carrier of Record |
|---|---|---|---|
| 7345202592 | Y | IDA MI | Telnet Worldwide |
| 7346391093 | Y | MCDANIEL,PATSY | Charter Fiberlink |
| 6162394728 | N | NOT ASSIGNED | IP Horizon |

83.   In all of the cases of all of the numbers at issue, the Defendants appear to have either spoofed them to numbers that are not assigned or to numbers that are assigned to innocent third parties, as will be revealed through discovery, to further hide their location.

84.   With respect to each of the numbers listed above, none of the numbers permit a caller to call the number and lodge a do not call request during regular business hours. It is not possible to call any of those numbers back to lodge a Do Not Call request during regular business hours.

85.   Nor will anybody texting or calling those telephone numbers receive an alternate number to call to lodge a Do Not Call request during regular business hours.

86.   The aforementioned calls to the Plaintiff were unwanted.

87.   The calls were nonconsensual encounters.

88.   Plaintiff's privacy has been violated by the above-described telemarketing calls.

89.   Plaintiff never provided his consent or requested the calls.

90.   Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded. They were not provided

legally compliant opt out mechanisms. Furthermore, the calls unnecessarily used power, network resources, tied up landlines from receiving other calls, and wear and tear.

91. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

## Class Action Statement

92. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

93. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

94. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**Robocall Class:** All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their residential telephone or any other protected telephone service (3) from or on behalf of the Defendants (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendants' or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

95. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

96. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

97. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

98. This Class Action Complaint seeks injunctive relief and money damages.

99. The Class as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

100. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

101. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

102. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

103. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

104. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

  a. Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

  b. Whether Defendants made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class;

  c. Whether Defendants' conduct constitutes a violation of the TCPA; and

  d. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

  105. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

  106. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

  107. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents, if any, as discovery may reveal.

  108. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

  109. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(b)(1)(B) and/or (b)(1)(A)(iii)) on behalf of the Robocall Class**

110.  Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

111.  The Defendants violated the TCPA by sending or causing to be sent calls to the residential telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

112.  As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

113.  The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

114.  Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendants from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

115.  Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

116.  The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency

purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

117. Defendants' violations were negligent, willful, or knowing.

118. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

119. Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**THIRD CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

120. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

121. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

122. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

123. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier, by calling without transmitting CPN or ANI, or by calling while transmitting non-compliant CPN or ANI.

124. These violations were willful or knowing.

125. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

126. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B. Injunctive relief prohibiting Defendant from using artificial or prerecorded voices to contact residential telephone lines and other protected lines, except for emergency purposes, in the future;

  C. Injunctive relief prohibiting Defendant from transmitting inaccurate and non-compliant caller ID information in the future;

  D. That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

  E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

  F. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this September 8, 2025.

       */s/ Andrew Roman Perrong*
       Andrew Roman Perrong, Esq.
       Perrong Law LLC
       2657 Mount Carmel Avenue
       Glenside, Pennsylvania 19038
       Phone: 215-225-5529 (CALL-LAW)
       Facsimile: 888-329-0305
       a@perronglaw.com