# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

MARK DOBRONSKI, individually
and on behalf of a class of all persons
and entities similarly situated,

               CLASS ACTION
               Case No. 4:25-cv-11777-FKB-EAS
               District Judge F. Kay Behm

     Plaintiff,
               Mag. Judge Elizabeth A. Stafford

v.

CREDIT SWAG VENTURES, INC.
DBA CREDIT & DEBT,

     Defendant.

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS

     NOW COMES Plaintiff, MARK DOBRONSKI, by and through his

attorneys, and respectfully requests this Honourable Court to enter an order

denying Defendant's above-entitled motion for the reasons set forth in the

underlying brief.

Dated: October 20, 2025     PLAINTIFF, on behalf of himself
                         and others similarly situated,

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.     Whether the Court should deny Defendant's Motion to Dismiss because the Plaintiff has plausibly alleged Defendant's direct liability under the TCPA?

**Suggested Answer**:  Yes.

2.     Whether the Court should deny Defendant's Motion to Dismiss because Plaintiff has plausibly alleged that Defendant initiated more than one telephone solicitation?

**Suggested Answer**:  Yes.

3.     Whether the Court should deny Defendant's Motion to Dismiss because there is a private right of action for the caller ID regulations contained in 47 C.F.R. § 64.1200(e)?

**Suggested Answer**:  Yes.

4.     Whether the Court should deny Defendant's Motion to Dismiss because the Defendant acted knowingly?

**Suggested Answer**:  Yes.

5.     Whether the Court should deny Defendant's Motion to Dismiss because there is a risk of future harm?

**Suggested Answer**:  Yes.

6.     Whether the Court should deny Defendant's Motion to Strike because the caller ID class, as pled, is not failsafe?

**Suggested Answer**:  Yes.

i

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>
## <u>FOR THE RELIEF SOUGHT</u>

*Dobronski v. CHW Grp.*, No. 24-CV-11649, 2025 WL 2426370, at *3-*4 (E.D. Mich. Aug. 21, 2025).

*VanderSloot v. Charles Baratta LLC*, No. 24-CV-07096 (JMW), 2025 WL 1898929, at *2 (E.D.N.Y. July 9, 2025).

*Bradshaw v. CHW Grp., Inc.*, 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025).

*Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022).

*Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025).

*Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014).

*Gutierrez v. Fla. Advert. & Mktg. Corp.*, 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019).

*Johansen v. One Planet Ops, Inc.*, No. 2:16-CV-00121, 2018 WL 1558263, at *3 (S.D. Ohio Mar. 5, 2018).

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015).

## <u>TABLE OF CONTENTS</u>

**I.     Introduction** ................................................................................................1

**II.    Legal Standard** .........................................................................................2

**III.   Argument** ...................................................................................................3

    A.      The Plaintiff has alleged direct liability in far greater detail than in other similar cases. Courts, including this one, have already determined those allegations sufficient for direct liability. This Court should again hold here. .......3

    B.      Plaintiff has alleged far more than one call.................................................11

    C.      There is a private right of action for Section 64.1601(e). ..........................14

    D.      The Defendant acted knowingly. ................................................................19

    E.      The injunctive relief claims should not be dismissed. ...............................22

    F.      The class claims should not be struck. ........................................................22

**IV.   Conclusion**................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................................2

*Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168 (D.N.J. Jan. 11, 2023)............................................................................... 13, 22

*Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-05310-DGE, 2025 WL 2880136 (W.D. Wash. Oct. 9, 2025) ...................................................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).................................................2, 3

*Bird v. Pro Star Builders, Inc.*, No. 2:22-cv-03610, 2022 WL 18216007 (C.D. Cal. Nov. 28, 2022) ....................................................................................13

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015)............25

*Bradshaw v. CHW Grp., Inc.*, 2025 WL 306783 (D.N.J. Jan. 24, 2025) .................9

*Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ...................................................................................19

*Cacho v. Amity One Debt Relief*, No. EP-24-CV-160-KC, 2024 WL 4594177 (W.D. Tex. Oct. 24, 2024)...................................................................16

*Carlton v. PDR Network, LLC*, 80 F.4th 466 (4th Cir. 2023) .................................17

*Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147 (N.D. Ill. 2014) ...........................19

*Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687 (E.D. La. Feb. 6, 2013).........................................................................4

*Dahdah v. Rocket Mortgage, LLC*, No. 4:22-cv-11863-FKB-DRG, ECF No. 26 (E.D. Mich. Sept. 23, 2023)...................................................................12

*Dobronski v. Baid*, No. 24-cv-10297, 2024 WL 3997059 (E.D. Mich. Aug. 29, 2024).........................................................................................11

*Dobronski v. CHW Grp.*, No. 24-CV-11649, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025)................................................................................. passim

*Dobronski v. Fam. First Life, LLC*, No. 22-cv-12039, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024).........................................................................11

*Dobronski v. Juliasangel Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265 (E.D. Mich. Sept. 17, 2025) ..................................................14

*Dobronski v. Russo*, No. 2:23-CV-12288, 2024 WL 4363118 (E.D. Mich. Sept. 30, 2024)................................................................................. 5, 8, 10

*Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025). 2, 14, 15, 18

*Flores-Figueroa v. United States*, 556 U.S. 646 (2009).........................................20

*Ford v. NaturaLawn of Am., Inc.*, No. CV 24-354 PJM, 2024 WL 3161762 (D. Md. June 25, 2024)...................................................................................16

*Gutierrez v. Fla. Advert. & Mktg. Corp.*, 387 F. Supp. 3d 1410 (S.D. Fla. 2019)..22

*Johansen v. One Planet Ops, Inc.*, No. 2:16-CV-00121, 2018 WL 1558263 (S.D. Ohio Mar. 5, 2018) ................................................................................24

*Keifer v. HOSOPO Corp.*, No. 18-cv-1353-CAB, 2018 WL 5295011 (S.D. Cal. Oct. 25, 2018) ..............................................................................21

*Lyngaas v. Curaden Ag*, 992 F.3d 412 (6th Cir. 2021 ............................................24

*Marbury v. Madison*, 5 U.S. 137 (1803) ...................................................17

*Matthews v. Senior Life Ins. Co.*, No. 1:24-CV-1550-MSN-LRV, 2025 WL 1899984 (E.D. Va. July 9, 2025) .......................................................10

*Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015) ..............................................................................21

*Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823 (N.D. Ill. Dec. 7, 2022) ..............................................................................12

*Newell v. JR Cap., LLC*, No. CV 25-1419, 2025 WL 2004706 (E.D. Pa. July 16, 2025) ...................................................................................14

*Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS (JCx), 2014 WL 3101426 (C.D. Cal. July 7, 2014) .......................................................21

*Panacci v. A1 Solar Power*, Inc., No. 15-cv-00532-JCS, 2015 WL 3750112 (N.D. Cal. June 15, 2015) .......................................................................23

*Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314 (N.D. Ga. 2024) .........18

*Rikos v. Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015) ..............................23

*Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014) ..............................................................................23

*Scruggs v. CHW Grp., Inc.*, No. 2:20CV48, 2020 WL 9348208 (E.D. Va. Nov. 12, 2020). ...................................................................................10

*Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378 (E.D. Pa. Apr. 5, 2019) ..............................................................................12

*Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765 (N.D. Ill. 2014) .........4

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)...................................................4

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727 (N.D. Ill. 2014) ...........................13

*VanderSloot v. Charles Baratta LLC*, No. 24-CV-07096 (JMW), 2025 WL
    1898929 (E.D.N.Y. July 9, 2025)........................................................................9

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)........................23

**Statutes**

15 U.S.C. § 6153 ............................................................................ 15, 18

47 C.F.R. § 64.1601(e)...................................................................14

47 C.F.R. § 64.1601(e)(1)...............................................................25

47 U.S.C. § 227(b)(1)(A) ...............................................................20

47 U.S.C. § 227(c)(1)......................................................................15

47 U.S.C. § 227(c)(2)......................................................................16

47 U.S.C. § 227(c)(5)......................................................................11

Fed. R. Civ. P. 12(b)(1)...................................................................22

Fed. R. Civ. P. 12(b)(6)................................................................2, 5

Fed. R. Civ. P. 12(f) ........................................................................3

Fed. R. Civ. P. 8 ..............................................................................2

**Other Authorities**

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
    1380 (3d ed.)......................................................................................3

Amended Complaint (Am. Compl.) ............................................. 7, 8, 12

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal
    Texts* (2012)...................................................................................15

Defendant's Motion to Dismiss, ECF No. 14 ...................................7, 15

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*
    ("1992 TCPA Order"), 7 FCC Rcd. 8752 ..................................................... 16, 17

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*
    ("2003 TCPA Order"), 18 FCC Rcd. 14014 ................................................ 18, 19

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

MARK DOBRONSKI, individually
and on behalf of a class of all persons
and entities similarly situated,

      CLASS ACTION
      Case No. 4:25-cv-11777-FKB-EAS
      District Judge F. Kay Behm
      Mag. Judge Elizabeth A. Stafford

      Plaintiff,

v.

CREDIT SWAG VENTURES, INC.
DBA CREDIT & DEBT,

      Defendant.

---

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
# MOTION TO DISMISS

## I.   INTRODUCTION

Attempts by the robocalling industry to blame the victims of their calls for failing to allege "sufficient" facts to state a claim for direct liability are nothing new. Trial and appellate courts have had little trouble rejecting such tactics. But now, it has come to this. Defendant Credit Swag Ventures, Inc. d/b/a Credit & Debt makes a bold assertion without the corresponding factual predicate: that the Plaintiff cannot establish direct liability as to it, *despite speaking* to a Credit & Debt employee on a call, and despite numerous admissions by this employee and her supervisor after the fact. For this reason, this Court, like nearly every other Court to consider similar motions, should reject it, as it has done with a similar motion previously. *Dobronski v. CHW Grp.*, No. 24-CV-11649, 2025 WL 2426370, at *3-*4 (E.D. Mich. Aug. 21, 2025). The Plaintiff has plausibly alleged a case for direct liability at the pleadings stage entitling him to further discovery. It alleges specific dates and times and a predicate for the logical, well-pled allegation that Defendant was responsible for the calls. Those facts state claims for direct liability under the TCPA. Defendant's contrary authorities are out-of-circuit, procedurally distinct, or deal with threadbare pleadings, unlike here.

Defendant's other reasons for dismissing or striking the class allegations fare no better. At least one basis, that there exists no private right of action for the TCPA's caller ID claims, has been rejected by this Court twice (if not thrice) and

more recently by at least two other district courts in different circuits. *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025). The faulty reasoning embraced by the Defendant provides no basis for dismissing the instant claims, let alone striking them, at the pleadings stage. The motion ought be denied.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement" of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up). In determining whether a claim is plausible, the court must "draw on its experience and common sense." *Id.* at 678. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed

only where it appears that there are not "enough facts to state a claim that is

plausible on its face," not merely because the defendant proffers some contrary

facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Rule 12(f) provides that the court may "strike from a pleading an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter," either on

its own or on motion made by a party before responding to the pleading, such as

the Complaint, as here. FED. R. CIV. P. 12(f), (f)(2). However, the 12(f) device is

used rarely and is particularly disfavored, applying, by its very definition, to

"redundant, immaterial, impertinent, or scandalous matter." Motions to strike are

often sought "simply as a dilatory or harassing tactic." 5C Charles Alan Wright &

Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed.) (explaining that

motions to strike are typically appropriate only when a pleading lacks a legal basis,

not because of a question as to whether or not the class can be certified).

### III.   ARGUMENT

A.   *The Plaintiff has alleged direct liability in far greater detail than in other similar cases. Courts, including this one, have already determined those allegations sufficient for direct liability. This Court should again hold here.*

As described above, the Court's analysis must begin and end with whether

or not the Plaintiff has plausibly alleged the Defendant's involvement in the calls

with sufficient specificity to give rise to the inference of direct liability. He has

done so because he has pled facts which sufficiently prove at the pleadings stage

that Defendant directly placed the calls complained of.

In essence, Defendant adopts the classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. But Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red herring argument that the Plaintiff has failed to state a claim because he has allegedly failed to set forth facts giving rise to direct liability that the Defendant placed the calls at issue. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Nevertheless, the Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that Credit & Debt placed the illegal calls at issue here.

Direct TCPA liability attaches to an entity that "initiates" the call, that is, the entity that either takes the necessary steps to physically place it or is "so involved in" the placement that it essentially made the call itself. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014). Taking the well-pleaded facts as true, as the Amended Complaint's allegations make clear, and unlike in *Dobronski v. Russo*, the Plaintiff has pled more than adequate facts to allow this

4

Court to determine that the Defendant directly placed the calls complained of at the pleadings stage. No. 2:23-CV-12288, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024). There, the same Plaintiff here *conceded* that he "d[id] not know the identity of the telemarketers who initiated the Subject Calls." *Id.* As a result, Mr. Dobronski in that case made what the Court determined was a conclusory allegation that the "Defendants or Defendants' agent" initiated the subject calls. *Id.*

To that end, the Plaintiff's loss in *Russo* is contrasted with his victory in *Dobronski v. CHW Grp.*, 2025 WL 2426370, at *3-*4, where the defendant, represented by the *same law firm as here*, filed a nearly *identical* Rule 12(b)(6) motion on nearly identical premises and citing nearly identical authority. In denying Defendant's motion, Judge Parker explained how the Plaintiff there, like here, adequately alleged a case for direct liability against the Defendant, including by providing "additional details" about the calls that were absent from the Plaintiff's pleading in *Russo*:

> Plaintiff does allege a supporting fact: that in all calls aside from Call 5, the callers identified themselves as "with" or "from" Choice Home Warranty. Defendant qualifies this fact as insufficient, citing non-binding cases where courts found a telemarketer's indication of "association with" an entity during a call with a plaintiff insufficient to show that the entity actually made the call. Defendant also faults Plaintiff for not providing enough factual matter to establish that the calls came from a number belonging to Defendant. . . . This Court finds that Plaintiff alleges sufficient facts to plausibly claim Defendant's liability for the subject calls. . . . If a caller's self-identification cannot be taken as an indication of their identity at the pleading stage, a nigh insurmountable barrier would be erected against recovery for consumers under the TCPA. Facts alleged in a complaint need

5

not be detailed, and a plaintiff need not prove his case at this stage. . . . Indeed, some facts, such as Defendant's control over the phone numbers used to call Plaintiff, may be revealed only through discovery. Requiring plaintiffs to plead such facts initially would impede the right to recovery under the TCPA.

And, in distinguishing the litany of string citations cited by defendant in that case, most of which (if not all) Defendant here recites, the Court remarked:

Defendant cites many out-of-circuit cases in an attempt to thread this argument. But the cases Defendant cites are distinguishable. For example, in *Aaronson v. CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019), the complaint was devoid of facts such as "how the caller identified itself, the substance of the calls, or any other details from the telephone calls that would tend to identify defendant as the party that actually, physically took the steps to place the calls to plaintiff's phone." Here, Plaintiff alleged details of each call, including the caller's self-identification, the substance, and other details such as click sounds and the amount of delay before a live person answered each call.

*Id.* n.1. This Court should apply the same reasoning as did Judge Parker exactly two months ago. Like in *CHW Grp.*, the Plaintiff has pled sufficient factual allegations connecting the Defendant to the calls at issue. Specifically, the Plaintiff has alleged that he received at least five telephone calls containing the same message content, all of which originated from "spoofed" caller IDs. (Am. Compl. ¶ 39, 42). Those calls all came from the fictitious robotic recording, "Jessica" with the "illegally and fictitiously named 'Debt Relief Group.'" (Am. Compl. ¶ 42). This entity "Jessica," was obviously a robot because Plaintiff "intentionally responded in a vulgar manner," had an unnatural pause and cadence, and displayed no emotion or ability to reason. (Am. Compl. ¶ 43-47). The Plaintiff was then

6

transferred by "Jessica" to an individual named "Jacob," who was obviously human, who collected basic demographic and other information about the Plaintiff and then transferred the call to Defendant Denise Orozoco, who confirmed that she was calling from "Credit & Debt." (Am. Compl. ¶ 51-56).

The Plaintiff has also explained the use of the fake names on the calls and indicated that Denise already had the information he had provided "Jacob." (Am. Compl. ¶ 57). Contrary to the Defendant's argument that this indicates that some unidentified third-party placed the calls, ECF No. 14, PageID.103, the provision of information sharing logically connects both individuals to the same Defendant, not a third party. If "Jacob" were not calling from the same place or was calling from a different company or an unnamed third-party entirely, then it stands to reason that Denise would not have had the Plaintiff's information that was provided to "Jacob." (*Id.*). The provision of information indicates that both parties had use of the same call and customer information system. And the fact the Plaintiff received a call back from Defendant Orozoco, Defendant Credit & Debt's employee, from a spoofed caller ID number, demonstrates that the Defendant's telephone system is capable of sending out calls while spoofing caller IDs. (Am. Compl. ¶ 63-64). Moreover, Denise avoided questions about the use of a prerecorded voice but emailed the Plaintiff from the Defendant's email domain, confirming that the subject calls were placed by Defendant. (Am. Compl. ¶ 62). Finally, the Plaintiff

7

called Defendant directly and spoke to Defendant Orozoco. (Am. Compl. ¶ 67). As a result of that interaction, Defendant Orozoco's supervisor, again called the Plaintiff from a spoofed caller ID to apologize to the Plaintiff and *admitted to the very conduct Defendant Credit & Debt now denies,* that of using a prerecorded voice. (Am. Compl. ¶ 68). This Court must credit a Credit & Debt's supervisor's own declaration against interest, during what was itself a spoofed call, that Credit & Debt sent the prerecorded calls complained of.

These facts as pled are just like those that this very Court has held as sufficient in *CHW Grp.* for a holding of direct liability and unlike the bare allegations, coupled with the admissions of non-identification, present in *Russo.* Those facts, pled with specificity, permit the straightforward inference that Defendant Credit & Debt placed the subject calls at issue directly. That is all that is required at the pleadings stage. This Court has not been the only one to realize that such allegations are sufficient at the pleadings stage to give rise to the inference of direct liability, either. These are precisely the kind of connect-the-dots pleading allegations that courts find sufficient to infer direct initiation at the pleading stage.

For example, in *VanderSloot v. Charles Baratta LLC*, the Eastern District of New York considered a similar motion in which the defendant claimed that the Plaintiff insufficiently connected "at least 69 calls" to the Defendant, based on a complicated web of connections that the Court used a chart in order to decipher,

including the use of multiple telephone numbers and, as here, ultimately an email from an individual with an email at the Defendant's email address. *VanderSloot v. Charles Baratta LLC*, No. 24-CV-07096 (JMW), 2025 WL 1898929, at *2 (E.D.N.Y. July 9, 2025). In *VanderSloot*, the court held that the plaintiff in the sufficiently "connect[ed] the dots." *Id.* at *6. In so holding, the Court pointed to similarly specific record evidence connecting the calls at issue and the entities that placed them to the defendants. In doing so, the Court held that those allegations and connections "effectively connect[ed] the dots between the phone numbers and "fictitious" individuals and how they trace back to Defendant Prime." *Id.* at *8.

As another Court has explained, the Plaintiff is entitled to take Ms. Orozoco and her supervisor at their word:

> After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who he is. So too as to the December 8 call. The caller allegedly introduced herself as 'Erica ... from [the Defendant].' Why then would it not be plausible to conclude that he was, in fact, 'Erica ... from [the Defendant]'?

*Bradshaw v. CHW Grp., Inc.*, 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025). And, as *this* Court explained in *CHW Grp.*, some of the information Defendant faults Plaintiff for not pleading, such as the ownership of spoofed numbers and use of them in the calling conduct, are within the Defendant's sole knowledge. 2025 WL 2426370, at *4 ("[S]ome facts, such as Defendant's control over the phone numbers used to call Plaintiff, may be revealed only through discovery.").

The nonbinding authorities that Defendant highlights are easily distinguishable. In *Scruggs*, the Court held that the Plaintiff provided "virtually no detail about the calls at issue, let alone the identity of the caller(s), the duration, the number(s) from which they originated, the substance of the calls, or more importantly who physically placed any of the calls—i.e., CHW or some third party who merely stated they were 'associated with' CHW somehow." *Scruggs v. CHW Grp., Inc.*, No. 2:20CV48, 2020 WL 9348208, at *5 (E.D. Va. Nov. 12, 2020). That is plainly distinguishable from the pleadings here. And in *Matthews*, the Court subsequently *denied* a motion to dismiss, reasoning that, although "Plaintiff's original complaint was devoid of factual development and contained only the conclusory allegations that the calls at issue were "from [SLIC]" and that Swisa was an employee of SLIC," the amended complaint "remedi[ed] those deficiencies" by containing "more factual support for Plaintiff's claim including the details about Swisa's license as an agent with SLIC, that the callers, including Swisa, identified themselves as calling "from SLIC," and that they were selling SLIC insurance." *Matthews v. Senior Life Ins. Co.*, No. 1:24-CV-1550-MSN-LRV, 2025 WL 1899984, at *2 (E.D. Va. July 9, 2025).

Applying those cases to the Plaintiff's, the cases cited by Defendant failed on nearly identical grounds that the Plaintiff did in *Russo*. But this case fits more neatly into the factual pleading that this Court has already held as sufficient in

10

*CHW Grp*. 2025 WL 2426370, at *4 (citing, *inter alia*, *Dobronski v. Fam. First Life, LLC*, No. 22-cv-12039, 2024 WL 1342668, at *8 (E.D. Mich. Mar. 29, 2024) and *Dobronski v. Baid*, No. 24-cv-10297, 2024 WL 3997059, at *2 (E.D. Mich. Aug. 29, 2024)). This Court should hold the same, just as Judge Parker did. The Plaintiff has more than adequately pled a case for direct liability.

B.     *Plaintiff has alleged far more than one call.*

       Defendant relatedly argues that the Plaintiff fails to allege that he received more than one telephone solicitation within a twelve-month period. But as the Plaintiff explains, he received at least four calls prior to the call in which he identified the Defendant, the call in which he identified the Defendant, and two calls thereafter, including one from Ms. Orozoco herself. The Court's analysis can end there. The Plaintiff has unquestionably pled that he received at least seven calls by the same entity, the Defendant, within a twelve-month period, to his number on the National Do Not Call Registry, precisely as the statute requires. 47 U.S.C. § 227(c)(5). Their purpose was to advertise Defendant's debt services.

       As another Court has explained, playing along with a caller on one call is sufficient to allow the Court to ascertain the purposes of the other calls, "The fact that he "play[s] along" with telemarketing scripts to "find out who [they] really are" is not as devious as Defendant suggests. A plaintiff must know the name of the telemarketer that violated the TCPA in order to bring suit against it, and the

content of the message can help prove that it was a solicitation." *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019). The court's decision in *Shelton* shows a plaintiff may identify that the calls were solicitations by playing along with a caller to ascertain the nature of its sales pitch, exactly as alleged here. And the calls were clearly solicitations because, far from relying on conclusory labels, as in *Dahdah v. Rocket Mortgage, LLC*, No. 4:22-cv-11863-FKB-DRG, ECF No. 26, PageID.308, (E.D. Mich. Sept. 23, 2023), the Plaintiff was ultimately attempted to be *sold the Defendant's debt settlement services*, as evidenced through the email attached to the Complaint, ECF No. 12-1, PageID.83, and the disclaimer explaining Defendant's business model.

For that matter, this case is also distinguishable from the cases cited by Defendant because of the Defendant's very own post-call conduct. The Plaintiff was actually signed up for Credit & Debt's services and received an email to submit information to a portal to receive information on debt settlement options for which Defendant would be compensated. To suggest that there is some doubt as to the nature of the calls is too clever by half. The TCPA does not require a plaintiff to answer each call, as is evidenced by permitting recovery for single violations, and the Plaintiff received seven, as in *Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022):

> Moore acknowledges that he never spoke with anyone — including anyone
> from Healthcare Solutions — during the first call. That said, he points out

12

that both calls came from the same number, on the same day. So, it is reasonable to assume that the same caller made both calls for the same reason. . . . The issue of who made the first call isn't much of a whodunit. Moore received two calls from the same number, and the second caller was Healthcare Solutions. It is reasonable to conclude that Healthcare Solutions called the first time, too. Does Healthcare Solutions share a phone number with someone else? Unlikely.

And the subsequent conduct supports a reasonable inference that all seven calls were telephone solicitations from Defendant to state a Section 227(c) claim. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) ("The content and timing of the fourth call allows the court to draw a reasonable inference that [the telemarketer] made the first three calls to market [the defendant]'s services."); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *4 (D.N.J. Jan. 11, 2023) ("[W]hile Plaintiff only alleges the specific content of one call, she . . . claims that Defendant began calling . . . to sell Plaintiff a home warranty plan, that the calls were for telemarketing purposes, and that Defendant placed calls to [the plaintiff] on numerous occasions attempting to solicit Plaintiff a home warranty plan[.] These allegations create a reasonable inference that more than one of the three calls explicitly listed were 'telephone solicitations' in violation of the statute."); *Bird v. Pro Star Builders, Inc.*, No. 2:22-cv-03610, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022) ("The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not."). In light of the Court's

13

obligation to draw all reasonable inferences in Dobronski's favor at the pleading

stage, it should find it reasonable to infer from the content and timing of the calls

that the calls were all for the same purpose, soliciting debt services.

C.     *There is a private right of action for Section 64.1601(e).*

Recently, this Court undertook a comprehensive analysis of the genesis of

the private right of action for caller ID claims under 47 C.F.R. § 64.1601(e)

*Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d at 375. *Selectquote* represents

the most comprehensive analysis of Section 1601(e) undertaken by a Court to date,

and it happens to have been conducted by Judge Murphy of this Court. In

*Selectquote*, Judge Murphy thoughtfully analysed and explained the promulgative

authority for the private right of action under Section 64.1601(e) as under Section

227(c) of the TCPA. Since *Dobronski*, every single court to consider a Section

64.1601(e) caller ID claim has held that there is a private right of action for

violations thereof, including Judges Parker and Berg of this Court. *Newell v. JR*

*Cap., LLC*, No. CV 25-1419, 2025 WL 2004706, at *2 (E.D. Pa. July 16, 2025);

*Dobronski v. CHW Grp., Inc.*, 2025 WL 2426370, at *7; *Dobronski v. Juliasangel*

*Mktg., LLC*, No. 2:24-CV-12379-TGB-APP, 2025 WL 2659265, at *11 (E.D.

Mich. Sept. 17, 2025); *Barton v. Bright Solar Marketing LLC*, No. 3:25-CV-

05310-DGE, 2025 WL 2880136, at *5 (W.D. Wash. Oct. 9, 2025).

*Selectquote* and its progeny have thoroughly addressed and rejected the

14

reasoning adopted by the citations relied on by Defendant, including *Worsham*, and the other *Dobronski* cases, including *Transamerica Life*. This Court should continue to adopt the same reasoning embraced by all other judges of this Court post-*Selectquote.*

Nor is it at all availing that the TCPA explicitly required the FCC to issue rulemaking within 120 days of December 20, 1991. ECF No. 14, PageID.111, 113, nor does it render *Selectquote* wrong. Defendant gets this threshold question wrong. A review of 47 U.S.C. § 227(c)(1)(D) confirms that Congress explicitly contemplated and authorized the FCC to "consider whether there is a need for *additional Commission authority* to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, *propose specific restrictions to the Congress*." In other words, no part of 47 U.S.C. § 227(c)(1) or (c)(2) barred future rulemaking, as the Defendant claims. Congress was merely setting a date by which it desired *initial* rulemaking to be completed by, not barring *future* rulemaking after that date, and most certainly not in light of explicit Congressional authority authorizing such subsequent rulemaking in 15 U.S.C. § 6153, where Congress authorized the FCC to conduct the rulemaking that resulted in the creation of the Do Not Call Registry and the instant caller ID regulations. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 278 (2012)

("The one body whose future actions a legislature has no power to affect is the legislature itself. Just as a corporate board of directors cannot adopt an immutable policy, legislators cannot make their laws irrepealable or disable themselves or their successors from taking action."). In other words, at the time it passed the TCPA, Congress made clear that the 1992 report it required was to be an *initial report*, not a *bar* to future rulemaking, as claimed by the Defendant:

> Subsection (c) also provided the FCC authority to 'require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase.' § 227(c)(3). The FCC did so when it created the national 'Do-Not-Call' registry. 47 C.F.R. § 64.1200(c)(2).

*Ford v. NaturaLawn of Am., Inc.*, No. CV 24-354 PJM, 2024 WL 3161762, at *3 (D. Md. June 25, 2024); *accord Cacho v. Amity One Debt Relief*, No. EP-24-CV-160-KC, 2024 WL 4594177, at *4 (W.D. Tex. Oct. 24, 2024). In any event, as has been discussed in *Selectquote*, Congress explicitly authorized the promulgation of the regulation at issue here, "under the [TCPA,]" when it passed the 2003 Act.

The FCC acted pursuant to Congress' mandate in 47 U.S.C. § 227(c)(2) and, in so doing, explicitly made clear to Congress that it presumed to leave the door open to future rulemaking. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("1992 TCPA Order"), CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752. In considering whether it was feasible to implement the caller ID regulations in 1992, the FCC concluded that, given the limitations of

16

technology *at the time,* lack of widespread caller ID adoption precluded such a rule and might shift costs to consumers, which would ultimately detract from consumer protection efforts. *Id.* at 8760. Notably, in making such a determination, the FCC did *not* hold that a private right of action should not apply or that it was inappropriate from a consumer protection perspective. To the contrary, the FCC explicitly stated that a "consumer may also file suit . . . if he or she has received more than one telephone call . . . *in violation of the guidelines* for making telephone solicitations." *Id.* at 8780. The FCC used the word "the," not "these," indicating that the guidelines promulgated in the 1992 TCPA Order were not the exclusive remedies under which a consumer could sue under Section 227(c)(5), or that there would not be future guidelines, including under the 2003 Act and 2003 FCC Order. There can be little doubt that that direction came from § 227(c).

A statute is "alterable when the legislature shall please to alter it." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). But even if this Court were to adopt the Defendant's argument that Section 227(c)(1) in some manner restricted the FCC's ability to promulgate the caller ID regulations after the initial rulemaking in 1992, a proposition that conflicts with the presumption that "the TCPA is a remedial statute, it should be liberally construed", C*arlton v. PDR Network, LLC*, 80 F.4th 466, 479 (4th Cir. 2023), Congress explicitly reopened that door when it passed the Do Not Call Implementation Act of 2003 ("2003 Act"), permitting the

promulgation of additional regulations for which there exists a private right of action under Section 227(c). Pursuant to that mandate, the FCC began a rulemaking proceeding that expressly sought comment on whether "network technologies have been developed over the last decade," and which ultimately resulted in an order promulgating the implementation and incorporation of the instant caller ID rulemaking, as well as Do Not Call Registry rules. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. As the FCC explained in that 2003 TCPA Order rulemaking proceeding, "The new rules will also require all companies conducting telemarketing to transmit caller identification (caller ID) information, when available, and prohibits them from blocking such information." *Id.* at 14017.

"[T]he 2003 FCC [TCPA O]rder applies to section 227(c). . . .Therefore, Radvansky may bring a case." *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024)). The 2003 TCPA Order references Section 227(c) no fewer than 54 times and Section 227(d) only *once*, in the context of a 1997 regulation requiring fax broadcasters to print their information on fax messages. *Id.* at 14134. It references no other section of the TCPA as authority for the regulations it promulgated. As the *Selectquote* Court explained, in the 2003 Act, at 15 U.S.C. § 6153, Congress *explicitly* delegated authority to the FCC to

18

promulgate regulations, including the instant caller ID regulations, which it did in the 2003 TCPA Order. 773 F. Supp. 3d at 377. There can be no doubt that there is a private right of action under that express delegation and authorization.

D.    *The Defendant acted knowingly.*

The TCPA provides for treble damages for any entity violating the TCPA "knowingly" or "willfully." The Defendant claims that Plaintiff's allegations of such damages are "entirely conclusory." However, such an argument ignores the specificity of the Plaintiff's allegations, including that it knew that it was acting intentionally. In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (holding that knowing violation requires only that defendant know of the facts constituting the offense); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013). The Plaintiff has pled facts in his Amended Complaint, including supervisor statements and the use of spoofed caller ID numbers by employees, giving rise to the plausible inference that Defendant knowingly used illegal artificial or prerecorded voice robocalls and spoofed caller IDs to send the calls complained of. Accordingly, the Defendant's motion on this point must fail.

As the Supreme Court has explained, "knowingly" and "willfully" modify a transitive verb—"initiated." Ordinarily, a listener assumes that an adverb that

19

modifies a transitive verb "tells the listener how the subject performed the entire action." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). For example, "if a bank official says, 'Smith knowingly transferred the funds to his brother's account,' " listeners "would normally understand the bank official's statement as telling [them] that Smith knew the account was his brother's." *Id.* That is because "once [knowingly] is understood to modify the object of [the] verb[ ], there is no reason to believe it does not extend to the phrase which limits that object." *Id.* at 657 (Scalia, J., concurring in part and concurring in the judgment).

It would be difficult to conceive of a situation where a caller does *not* "know" that they were sending a call with an artificial or prerecorded voice or deliberately spoofing their caller ID. A listener uttering the phrase, "knowingly made a call using an artificial or prerecorded voice," *cf.* 47 U.S.C. § 227(b)(1)(A), would ordinarily understand that the person knew that he made a call and knew that he was doing so using an artificial or prerecorded voice. To accept Defendant's motion and dismiss the Plaintiff's demand for treble damages at the pleadings stage would necessarily require the Court to make a holding that the Plaintiff has not plausibly alleged that the Defendants *knew* that they were using an "artificial or prerecorded voice" "to make any call" (or, relatedly, not "transmitting" appropriate caller ID information) as the statute requires. In other words, the contrary holding, that the Defendant *did not know* it was using an

20

"artificial or prerecorded voice" is simply illogical when one considers the Plaintiff's facts as pled. Nothing more is required at the pleading stage.

It defies logic and common sense to argue that sophisticated entities like Defendant would "unknowingly" use a robot to send out robocalls with a spoofed caller ID, or allow its employees and supervisors to call people with those very same spoofed caller IDs. *See, e.g., Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS (JCx), 2014 WL 3101426, at *1, 4 (C.D. Cal. July 7, 2014) (holding wrong number automated calls was sufficient to state a claim for treble damages)*; Keifer v. HOSOPO Corp.*, No. 18-cv-1353-CAB, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018) (finding an allegation that plaintiff never provided his information to the defendant sufficient to state a claim for treble damages); *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 WL 431148, at *4 (N.D. Cal. Feb. 2, 2015) (finding allegations that "defendant, using an ADTS [sic], sent text message to plaintiff in knowing and/or willful violation of the TCPA" sufficient to state a claim for treble damages). Plaintiff's complaint plainly demonstrates that Defendant was taking intentional action in calling numbers on the Do Not Call Registry, using spoofed caller IDs, and prerecorded calls. Such allegations are sufficient to put Defendant on notice of the potential for the fact that a factfinder can determine that the violations were done in a "knowing" or "willful" manner.

21

E.     *The injunctive relief claims should not be dismissed.*

Defendant also moves pursuant to FED. R. CIV. P. 12(b)(1) to dismiss

Plaintiff's claims for injunctive relief, arguing Plaintiff lacks Article III standing to

obtain injunctive relief. In this regard, the Defendant's only jurisdictional

challenge attacks the Plaintiff's standing to seek injunctive relief on the specious

basis that the Plaintiff has not adequately pled a risk of future injury. Defendant

raises a mere facial challenge, not a factual one, as all the Defendant simply argues

is that Plaintiff's pleadings have not shown any risk of future injury. Yet Plaintiff's

allegations do establish a risk of future injury. As a telephone user, Plaintiff is at

risk of future telemarketing calls from Defendant. Defendant offers no facts or

arguments rebutting the risk that they will continue to call, as alleged, nor do they

even claim to have ceased making them. That would be a lie. These allegations are

sufficient. *Atkinson*, 2023 WL 166168, at *7 ("[G]iven the recurrent and relatively

recent nature of the alleged calls and the fact that Defendant continued to call

Plaintiff after she repeatedly asked to be removed from the call list, the Court finds

that Plaintiff has alleged facts which, accepted as true, establish a sufficient

likelihood that Defendant will call her again in the future."); *Gutierrez v. Fla.

Advert. & Mktg. Corp.*, 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019).

F.     *The class claims should not be struck.*

A failsafe class is a class definition that is impermissibly circular because it

defines class membership in terms of success on the merits of the case with reference to legal conclusions, making it impossible to determine who belongs in the class without first resolving the substantive legal claims. For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015). A failsafe class is a class that cannot be defined until the case is resolved on its merits and includes *only* those members who are *entitled* to relief. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions determined by objective criteria." *Panacci v. A1 Solar Power*, Inc., No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (cleaned up). In the TCPA context, a failsafe class definition revolves around a legal conclusion present in the class definition, for example, a class definition that includes a requirement that the Plaintiff not have consented to the communications. *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014) ("Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls.").

Defendant fundamentally misapprehends the questions the Court is called

upon to ask as legal ones which will affirmatively grant or deny membership, not factual ones. But they are factual questions, as the Amended Complaint itself demonstrates. For example, Plaintiff's counsel has already queried the Caller ID database and ascertained the transmitted caller ID information and demonstrated it did not match the Defendant's or telemarketer's name. And because, by definition, the calls were "spoofed," they could not possibly have reached the Defendant to permit the lodging of a Do Not Call request during regular business hours when called back. Class members don't have legal claims simply because the class criteria are satisfied based on logs; there remain legal questions independent of the factual ones present in the class definition, including questions regarding the capabilities of the Defendant's telephone carrier.

Here, the caller ID class definition is defined here with respect to objective criteria, not legal conclusions. Whether the Defendant sent more or less than one call in a twelve-month period is a question that is answered by objective criteria in the form of the Defendant's own telephone records. It's also materially identical to other classes Sixth Circuit court have certified. *Johansen v. One Planet Ops, Inc.*, No. 2:16-CV-00121, 2018 WL 1558263, at *3 (S.D. Ohio Mar. 5, 2018) (rejecting argument that "twelve-month period" language was failsafe because that is a factual question, not a legal conclusion). Relatedly, as in *Lyngaas v. Curaden Ag*, 992 F.3d 412, 430 (6th Cir. 2021), the Defendant's own telephone records will

24

show what caller ID name was transmitted or not transmitted on the call and if that is the Defendant's name. Apart from being capable of objective determination, even answering that question would not be dispositive of class members' claims because Defendant may have a defence in alleging that the capability of transmitting an accurate caller ID name was not provided by Defendant's telephone carrier. *Cf. id* (noting that class definition would include people who are not entitled to relief because they consented); 47 C.F.R. § 64.1601(e)(1) (imposing liability only when transmission of name is "available by the telemarketer's carrier"). Similarly, if any of the Caller ID numbers were "spoofed," thus by definition not transmitting a valid number, a Court would then need to make the determination if that qualifies as providing a number that "permit[s] any individual to make a do-not-call request during regular business hours," and what the elements of that claim are as a matter of first impression.

Defendant also seeks the wrong remedy. "[W]hen impermissible class allegations are stricken at this early stage in the litigation, plaintiffs should be given leave to amend their complaint to proceed." *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 540 (E.D. Mich. 2015). Even if the class was failsafe (and it is not), the right remedy is to rectify through amendment, not strike.

## IV.  CONCLUSION

This Court ought deny the motion or permit leave to amend as necessary.

Dated: October 20, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

October 20, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com