UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

MARK DOBRONSKI, individually
and on behalf of a class of all persons
and entities similarly situated,

    Plaintiff,

v.

CREDIT SWAG VENTURES, INC.
DBA CREDIT & DEBT,

    Defendant.

Case No. 4:25-cv-11777-FKB-EAS
District Judge F. Kay Behm
Mag. Judge Elizabeth A. Stafford

# DEFENDANT'S REPY IN SUPPORT OF ITS MOTION TO DISMISS AND/OR STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

                                                                                            **Page**

ARGUMENT ....................................................................................................... 1

I.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO MEET HIS BURDEN UNDER RULES 12(B)(6) AND/OR 12(B)(1). ................................................................................................. 1

        A.    Plaintiff Does Not Plausibly Allege Any Theory of Liability Against Defendant. .................................................................... 1

        B.    Plaintiff Does Not Plausibly Allege Receipt of More Than One "Telephone Solicitation" from Defendant. ........................... 3

        C.    There is No Private Right of Action for 47 C.F.R. § 64.1601(e)......... 5

        D.    Plaintiff Fails to Amply Plead Willful or Knowing TCPA Violations. ............................................................................... 7

        E.    Plaintiff Lacks Article III Standing to Seek Injunctive Relief............. 7

II.   THE CALLER ID CLASS SHOULD BE STRICKEN UNDER RULES 12(F) AND 23. ................................................................................ 7

CONCLUSION .................................................................................................... 7

# **TABLE OF AUTHORITIES**

<u>Page</u>

### CASES

*Dahdah v. Rocket Mortg., LLC*,
  2023 WL 5941730 (E.D. Mich. Sept. 12, 2023) ................................................... 4

*Dobronski v. Selectquote Ins. Servs.*,
  773 F. Supp. 3d 373 (E.D. Mich. 2025) ............................................................... 6

*Fed. Nat'l Mortg. Ass'n v. River Houze, LLC*,
  596 F. Supp. 3d 925 (E.D. Mich. 2022) ............................................................... 3

*Hand v. Beach Ent. KC, LLC*,
  456 F. Supp. 3d 1099 (W.D. Mo. 2020) ............................................................... 2

*In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*,
  17 F.C.C. Rcd. 17459 (2002) ................................................................................ 6

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
  Report and Order, 7 F.C.C. Rcd. 8752 (1992) ................................................. 5, 6

*Lucas v. Telemarketer Calling from (407) 476-5680*,
  2019 WL 3021233 (6th Cir. May 29, 2019) ..................................................... 1, 2

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
  606 U.S. 146 (2025) ............................................................................................... 6

*Mey v. Pep Boys-Manny, Moe & Jack*,
  717 S.E.2d 235 (2011) ........................................................................................... 5

*Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*,
  68 FR 16250-01 ...................................................................................................... 6

*Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*,
  68 FR 44144-01, 2003 WL 21713245 ................................................................. 6

*Trujillo v. Free Energy Savs. Co., LLC*,
  2020 WL 7768722 (C.D. Cal. Dec. 21, 2020) ..................................................... 4

### STATUTES

47 U.S.C. § 227(c)(1) ................................................................................................... 5

47 U.S.C. § 227(c)(1)(D) ...................................................................................5

47 U.S.C. § 227(c)(2) ........................................................................................5

15 U.S.C. § 6153 ..............................................................................................6

ii

Defendant submits this Reply in support of its Motion to Dismiss and/or Strike (ECF No. 14). The Motion should be granted.

## ARGUMENT

I.  **Plaintiff's Claims Should Be Dismissed for Failure to Meet His Burden Under Rules 12(b)(6) and/or 12(b)(1).**

   A.  **Plaintiff Does Not Plausibly Allege Liability Against Defendant.**

Plaintiff's Opposition (ECF No. 16) fails to address the fatal flaw of his FAC; namely, the allegations reflect that a third-party, ***not*** Defendant, made the initial outbound call.[1] The FAC effectively admits that Defendant did not initiate the call by alleging that Plaintiff was ***transferred to*** Defendant as the result of a call initiated by another company, "Debt Relief Group." *See* ECF No. 12, ¶¶ 41-54. The FAC includes no plausible factual allegations that "Debt Relief Group" is related to Defendant.

Likely recognizing this glaring deficiency, Plaintiff attempts to distract from his pleading burden by characterizing Defendant's arguments as a merits challenge. *See* ECF No 16 at 4. Plaintiff is wrong. Defendant's challenge here is very clearly on the pleadings and concerns the lack of factual allegations connecting Defendant to the calls at issue. *See Lucas v. Telemarketer Calling from (407) 476-5680,* 2019 WL 3021233, at *5-6 (6th Cir. May 29, 2019).

Rather than attempt to rehabilitate his FAC by citing allegations showing that

---

[1] While Plaintiff claims receipt of "multiple [] calls" (ECF No. ¶ 39), he does not allege the content of these calls, let alone facts connecting such calls to Defendant.

1

Defendant initiated the call (there are none), Plaintiff points to (often conclusory) allegations unrelated to Defendant—e.g., allegations of a "spoofed" caller ID, that the calls came from "Debt Relief Group," that the call sounded robotic, that Plaintiff was transferred to "Jessica" and then to "Jacob," and that Plaintiff's information was shared.[2] *See* ECF No. 12 at 6-7. These allegations only emphasize the lack of pleaded facts going to Defendant's involvement in placing the calls. *See* ECF No. 14 at 7-10.

Plaintiff cites only three cases in support of his position that the FAC adequately alleges direct liability against Defendant. *See* ECF No. 16 at 5, 8-9 (citing *VanderSloot*, *Bradshaw,* and *CHW Grp*.). All are readily distinguishable. In *VanderSloot v. Charles Baratta LLC*, the plaintiff alleged numerous factual allegations not present here, including that the "[d]efendant allegedly sent a text message from the (210) 405-8263 telephone number, a number that [the p]laintiff maintain[ed] 'is a direct telephone number owned and operated by the Defendant in the Defendant's name.'" 2025 WL 1898929, at *8 (E.D.N.Y. July 9, 2025). Here, Plaintiff does not allege that Defendant owned or operated any of the phone numbers from which the calls were received. *See* ECF No. 12, ¶¶ 38, 40–41.

*Bradshaw v. CHW Grp., Inc.* also does not help Plaintiff. Plaintiff cites *Bradshaw* to argue that he can "take Ms. [Denise] Orozoco [*sic*] and her supervisor at

---

[2] Information sharing alone is inadequate to show involvement in the initial call, particularly where, as here, the allegations reflect a call by a different entity. *See, e.g., Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1128 (W.D. Mo. 2020).

their word" that they are associated with "Credit & Debt." *See* ECF No. 16 at 9. But *Bradshaw* focused on statements by the agents who made the calls. Here, the initial agent referenced an entirely different company, "Debt Relief Group." *See* ECF No 12, ¶ 42. Denise Orozco was the ***third*** agent to speak with Plaintiff, after multiple transfers. *See* ECF No. 12, ¶ 55. These allegations do not show that Credit & Debt physically initiated the outbound call in the first instance. *See* ECF No. 14 at 8. The alleged email from Credit & Debt is immaterial for the same reason—as Plaintiff admits, such email was received ***after*** Plaintiff was transferred to "Denise" with "Credit & Debt." *See* ECF No. 12, ¶ 62, Ex. A. Plaintiff's new (unpled) assertion that he submitted information to a portal thereafter (*see* ECF 16 at 12), does not remedy this shortcoming and should be disregarded in any event. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).

*Dobronski v. CHW Grp*. is similarly inapposite. It focuses on the initial callers identifying defendant to infer they were defendant's employees. In contrast, mention of Credit & Debt was thrice removed from the initial call. *See* ECF No. 12, ¶ 55.

Plaintiff abandons any theory of vicarious liability by not addressing it or any of Defendant's arguments on the same, conceding the point. *See Fed. Nat'l Mortg. Ass'n v. River Houze, LLC*, 596 F. Supp. 3d 925, 932 (E.D. Mich. 2022).

Thus, the FAC should be dismissed. *See Frank*, 2019 WL 4855378, at *2.

    **B.**    **Plaintiff Does Not Plausibly Allege More Than One "Telephone Solicitation" from Defendant.**

3

Plaintiff claims that he alleges more than one "telephone solicitation," but this is unsupported by the FAC. At most, Plaintiff alleges that he received "multiple" calls, *see* ECF No. 12, ¶ 39; but, he provides no content from which to ascertain that each of these calls was a "telephone solicitation," let alone that any of these calls were from Defendant, *see supra* Section I.A, or solicited the sale of Defendant's products or services. Plaintiff simply concludes the "purpose" was to "advertise Defendant's debt services." ECF No. 16 at 11. However, content, not purpose alone, is what matters. *See, e.g., Dahdah v. Rocket Mortg., LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023). Further, Plaintiff must plead ***facts***, not mere conclusions. *See id*.

Plaintiff's focus on "playing along" to "find out who [the caller] really [was]" is misplaced. ECF No. 16 at 11. These allegations, even if true, do not show that the call was a "telephone solicitation." Plaintiff's reference to an email allegedly sent after one of the calls also does not answer this question (nor does it reflect the sender's involvement in physically making the call in the first instance). If anything, the post-call email shows that Plaintiff was ***not*** solicited, as it refers only to *free* membership. *See* ECF No. 12, ¶ 62, Ex. A; ECF No. 14 at 15; *see, also Trujillo v. Free Energy Savs. Co., LLC*, 2020 WL 7768722 (C.D. Cal. Dec. 21, 2020) (finding that text messages offering free weatherization services were not telephone solicitations).

Plaintiff's National DNC Registry claim should be dismissed for this additional reason. *See, e.g., Mey v. Pep Boys-Manny, Moe & Jack,* 717 S.E.2d 235, 242 (2011).

4

### C.     There is No Private Right of Action for 47 C.F.R. § 64.1601(e).

Plaintiff argues that his Caller ID claims are actionable under Section 227(c)(5). *See* ECF No. 16 at 14-19. But his argument is based on a fundamentally flawed premise: that Section 227(c)(5) can be used to enforce regulations outside of those prescribed during the rulemaking authorized by Section 227(c)(1)-(2). *See* ECF No. 16 at 15. Not so.

Section 227(c) granted the FCC limited authority to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" "[w]ithin 120 days after December 20, 1991." 47 U.S.C. § 227(c)(1). Congress required this rulemaking to conclude "not later than 9 months after December 20, 1991." 47 U.S.C. § 227(c)(2). Section 227(c)(1) provides that if, as part of this 1992 rulemaking, the FCC found a need for additional authority to further restrict telephone solicitations, the FCC could "propose specific restrictions to the Congress." 47 U.S.C. § 227(c)(1)(D). The FCC did not make any such finding and nor seek such additional authority. *See In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 7 F.C.C. Rcd. 8752 (1992).

A decade later, the FCC implemented the Caller ID regulations in 47 C.F.R. § 64.1601(e) via a separate rulemaking. *See Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01, FCC 03-153,

5

(Jul. 25, 2003). By its plain language, Section 227(c)(5) cannot be used to enforce the regulations promulgated by this later FCC action. 47 U.S.C. § 227(c)(5) ("A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity ***in violation of the regulations prescribed under this subsection*** may . . . bring" an action).[3] [4]

Plaintiff's reliance on *Selectquote* is also misplaced. *See* ECF No. 19 at 14-15. That court ignored the time limits under Section 227(c) and incorrectly assumed that the FCC's authority to implement future Caller ID rules stemmed from that section. *See Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 376 (E.D. Mich. 2025).

This Court should follow the plain language of Section 227(c)(5) and numerous of its sister courts in this District and decline to permit a private right of action for violations of the Caller ID regulations under 47 C.F.R. § 64.1601(e). *See* ECF No. 14 at 17 (citing *Worsham*, *Transamerica Life*, *Tobias*).

---

[3] To the extent the FCC implemented the Caller ID rules "pursuant to" §227(c), this was outside its authority. *See In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 17 F.C.C. Rcd. 17459, 17487 (2002); *see also McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 155 n.2 (2025).

[4] The FCC enacted the National DNC Registry regulations at the same time, upon authority granted by Congress in the Do Not Call Implementation Act of 2003. 15 U.S. Code § 6153; *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 16250-01. Because the National DNC Registry rules were issued under a separate rulemaking, even these provisions should not be enforceable under Section 227(c)(5).

6

    **D.**    **Plaintiff Fails to Amply Plead Willful or Knowing TCPA Violations.**

Plaintiff's argument that he adequately alleges "willful" or "knowing" violations falls flat. *See* ECF No. 16 at 19-21. He does not identify any concrete factual allegations showing that Defendant "knew it was acting intentionally," ECF No. 16 at 19, nor could he, *see generally* FAC. Conclusions do not suffice. *See, e.g., Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4338957, at *8 (E.D. Mich. May 14, 2021).

    **E.**    **Plaintiff Lacks Article III Standing to Seek Injunctive Relief.**

Plaintiff does not cite any allegations implying risk of imminent harm. The FAC alleges no calls after April 3, 2025, and gives no basis to infer calls may continue.

**II.**    **The Caller ID Class Should be Stricken Under Rules 12(f) and 23.**

In arguing that his Caller ID class is not fail-safe, Plaintiff makes Defendant's point as to why it is (*see* ECF No. 16 at 24): Plaintiff acknowledges the Court would need to engage with factual merits questions to determine membership in the proposed Caller ID class by deciding whether a putative class member satisfies the elements for a violation of the Caller ID requirements. *See* ECF No. 14 at 23-24.

### CONCLUSION

For these reasons, the Court should grant the Motion.

                                      Respectfully submitted,

                                      **HOWARD & HOWARD ATTORNEYS PLLC**

Dated: November 10, 2025        By: */s/ Jonathan F. Karmo*
                                                          Jonathan F. Karmo (P76768)

450 West Fourth Street
Royal Oak, MI 48067
Phone: (248) 645-1483
jfk@h2law.com
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 10, 2025, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Jonathan F. Karmo*

8