## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MARK DOBRONSKI, individually
and on behalf of a class of all persons
and entities similarly situated,

        Plaintiff,

v.

CREDIT SWAG VENTURES, INC.
DBA CREDIT & DEBT
AND DENISE OROZCO,
        Defendants.

CLASS ACTION
Case No. 4:25-cv-11777-FKB-EAS
District Judge F. Kay Behm
Mag. Judge Elizabeth A. Stafford

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT
## DENISE OROZCO'S MOTION TO DISMISS

NOW COMES Plaintiff, MARK DOBRONSKI, by and through his

attorneys, and respectfully requests this Honourable Court to enter an order

denying Defendant Denise Orozco's above-entitled motion for the reasons set forth

in the underlying brief.


Dated: May 13, 2026

PLAINTIFF, on behalf of himself
and others similarly situated,


/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should deny Defendant Orozco's Motion to Dismiss because the Plaintiff has plausibly alleged Ms. Orozco's direct personal liability under the TCPA, including pursuant to 47 U.S.C. § 217, where the FAC alleges that Ms. Orozco personally placed a call to the Plaintiff using a spoofed caller ID, personally pitched the Defendant's services, and personally followed up with an email solicitation?

**Suggested Answer:** Yes.

2.      Whether the Court should deny Defendant Orozco's Motion to Dismiss because the Plaintiff has alleged direct, personal participation in or the personal authorization of the TCPA violative conduct under the standards *Am. BlastFax*, *City Select Auto Sales*, and *Shelton*?

**Suggested Answer:** Yes.

3.      Whether the Court should deny Defendant Orozco's Motion to Dismiss because, even if direct liability were lacking (it is not), the Plaintiff has pled facts giving rise to the inference of an agency relationship under all three theories of TCPA vicarious liability, actual authority, apparent authority, and ratification?

**Suggested Answer:** Yes.

ii

4.      Whether the Court should deny Defendant Orozco's joinder to Defendant Credit Swag's Motion to Dismiss for the reasons set forth in the Plaintiff's previously filed Opposition (ECF No. 16), incorporated by reference herein?

**Suggested Answer:** Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY
## FOR THE RELIEF SOUGHT

47 U.S.C. § 217.

47 C.F.R. § 64.1200(c)(2).

*Dobronski v. CHW Grp.*, No. 24-CV-11649, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025).

*Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025).

*Texas v. Am. BlastFax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

*City Select Auto Sales, Inc. v. David Randall Associates, Inc.*, 885 F.3d 154 (3d Cir. 2018).

## Table of Contents

INTRODUCTION ...............................................................................................1

LEGAL STANDARD ........................................................................................2

ARGUMENT ....................................................................................................3

   A.  Plaintiff adequately alleges direct personal liability against Ms. Orozco under the TCPA, including through 47 U.S.C. § 217. ..........................................3

   B.  The Plaintiff has alleged that Ms. Orozco personally initiated and participated in the calls and other TCPA-violative conduct. ............................11

   C.  Defendant's vicarious liability argument misapprehends Plaintiff's theory and inverts the agency analysis. ................................................21

   D.  Defendant Orozco's joinder to Credit & Debt's MTD fails for the reasons set forth in Plaintiff's Opposition. .......................................................24

CONCLUSION .................................................................................................25

## Table of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................3

*Black v. First Impression Interactive*, No. 21 C 3745, 2022 WL 169652 (N.D. Ill. Jan. 19, 2022) ..............................................................................................9

*Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641 (D.N.J. 2025) ........................19

*City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154 (3d Cir. 2018)............................................................................ 7, 8, 10, 22, 23

*Covington & Burling v. Int'l Mktg. & Rsch., Inc.*, No. CIV.A. 01-0004360, 2003 WL 21384825 (D.C. Super. Ct. Apr. 17, 2003) ..............................................2, 5

*Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025), motion to certify appeal denied, No. 24-CV-11649, 2025 WL 3068732 (E.D. Mich. Nov. 3, 2025)................................................18, 20

*Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484 (E.D. Mich. Dec. 1, 2025)...............................................................................................20

*Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir. 1993)...............................22

*Gottron v. Comm'r of Soc. Sec.*, No. 3:22-CV-123, 2022 WL 17717498 (N.D. Ohio Oct. 5, 2022) ...............................................................................25

*Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340 (E.D. Mich. Nov. 8, 2013)..............................................................12

*Joy Mgmt. Co. v. City of Detroit*, 455 N.W.2d 55 (Mich. App. 1990).................13

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011) ..........2, 5, 12

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997).................................25

*Montelongo v. My Fin. Sols. LLC*, 2020 WL 210814 (W.D. Tex. Jan. 14, 2020) 6, 7

*Murray v. Choice Energy*, No. 1:15-CV-60, 2015 WL 4204398 (S.D. Ohio July 10, 2015)................................................................................11

*Reynolds Corp. v. Nat'l Operator Servs., Inc.*, 73 F. Supp. 2d 299 (W.D.N.Y. 1999)..................................................................................4

*Schuette v. Rand*, No. 18-10497, 2020 WL 7664775 (E.D. Mich. Dec. 23, 2020).22

*Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir. 1990) ...............................23

*Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025) .................................................2, 5, 6, 10, 22, 23

*Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765 (N.D. Ill. 2014) .......11

*Speicher v. Hill*, No. 3:21-CV-01341-JG, 2024 WL 6082609 (N.D. Ohio Mar. 25, 2024)................................................................................25

*Spurlark v. Dimension Serv. Corp.*, No. 2:21-CV-3803, 2022 WL 2528098 (S.D. Ohio July 7, 2022) ...........................................................................6, 8

*Texas v. Am. BlastFax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)....2, 5, 7, 8, 22, 23

*VanderSloot v. Charles Baratta LLC*, No. 24-CV-07096 (JMW), 2025 WL 1898929 (E.D.N.Y. July 9, 2025) .......................................................19

*Wallace v. Fortune Hi-Tech Mktg., Inc.*, No. CV 5:11-127-GFVT, 2015 WL 12977342 (E.D. Ky. Mar. 26, 2015) ...............................................25

*Williams v. Schanck*, No. 5:15-CV-01434-MHH, 2019 WL 4246570 (N.D. Ala. Sept. 6, 2019) ....................................................................2, 5

**Statutes**

47 U.S.C. § 201(a).......................................................................10

47 U.S.C. § 217 ...........................................1, 4, 5, 6, 8, 10, 22, 23

47 U.S.C. § 227(b) ...............................................................................14

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................2

Fed. R. Civ. P. 12(b)(6).........................................................2, 16, 17, 24

**Regulations**

47 C.F.R. § 64.1200(c)(2) .......................................................................4

47 C.F.R. § 64.1601(e)..........................................................................24

**Other Authorities**

In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014 (2003) ...............................................................15

In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752 (1992) .................................................14, 15

In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015) ............................................14, 15, 16

Restatement (Second) of Agency § 2 .....................................................23

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MARK DOBRONSKI, individually
and on behalf of a class of all persons
and entities similarly situated,

                        CLASS ACTION
                        Case No. 4:25-cv-11777-FKB-EAS
                        District Judge F. Kay Behm

        Plaintiff,               Mag. Judge Elizabeth A. Stafford

v.

CREDIT SWAG VENTURES, INC.
DBA CREDIT & DEBT
AND DENISE OROZCO,

        Defendants.

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
## DENISE OROZCO'S MOTION TO DISMISS

## INTRODUCTION

Defendant Denise Orozco moves to dismiss the Plaintiff's First Amended Complaint ("FAC") on two principal grounds: (1) joinder to Defendant Credit Swag Ventures, Inc. d/b/a Credit & Debt's pending Motion to Dismiss, and (2) the contention that the Plaintiff has not adequately pled a theory of TCPA liability against Ms. Orozco personally. Both arguments fail.

As to the joinder, the Plaintiff has already filed a comprehensive Opposition to Credit Swag's Motion to Dismiss. Those arguments, demonstrating that the Plaintiff has alleged direct liability with abundant specificity, that he has alleged more than one telephone solicitation, that there is a private right of action for the caller ID claim, that Defendants acted knowingly, and that the injunctive and class allegations are sufficient, apply with equal force here and are incorporated by reference. They need not be repeated.

As to the personal liability of Ms. Orozco, her motion fundamentally misapprehends both the TCPA and the FAC's allegations. The TCPA, as part of the Communications Act of 1934, contains an express *respondeat superior* provision, 47 U.S.C. § 217, which imposes personal liability on any employee or agent whose "act, omission, or failure" of any "user" of a common carrier service also attaches to the individual acting in the course of his or her employment violates the statute.

1

Across the country, district courts have invoked § 217 to hold call center employees, supervisors, and corporate officers personally liable for TCPA violations in which they participated directly. *See, e.g.*, *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at \*6 (E.D. Pa. Mar. 14, 2025) (holding call center employee individually liable for the calls at issue); *Williams v. Schanck*, No. 5:15-CV-01434-MHH, 2019 WL 4246570, at \*4 (N.D. Ala. Sept. 6, 2019); *Texas v. Am. BlastFax, Inc.*, 164 F. Supp. 2d 892, 897 (W.D. Tex. 2001); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011); *Covington & Burling v. Int'l Mktg. & Rsch., Inc.*, No. CIV.A. 01-0004360, 2003 WL 21384825, at \*6-\*7 (D.C. Super. Ct. Apr. 17, 2003). This Court should do the same. At this stage, the Plaintiff has plausibly stated sufficient facts to demonstrate Ms. Orozco's personal involvement in the subject calls. This Court should deny the motion.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement" of the claim showing that the pleader is entitled to relief, in order to

2

give defendant fair notice of what the claim is and the grounds upon which it rests, not detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up). In determining whether a claim is plausible, the court must "draw on its experience and common sense." *Id.* at 678. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

A. *Plaintiff adequately alleges direct personal liability against Ms. Orozco under the TCPA, including through 47 U.S.C. § 217.*

Defendant Orozco's flagship argument is that the TCPA does not impose personal liability on every individual who happens to participate in a telephone call. True enough. But the Plaintiff has not merely pled participation. He has pled her direct, personal involvement in and orchestration of the TCPA violative

3

conduct. Ms. Orozco's motion entirely overlooks both the statutory provision that controls this issue and the regulation that the Plaintiff sues under.

Start with the regulation. 47 C.F.R. § 64.1200(c)(2) expressly states that "[n]o *person or* entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2) (emphasis added). The regulation's use of the disjunctive "person *or* entity" is decisive. Congress and the FCC obviously contemplated suits against individual telemarketers. Otherwise, a solo telemarketer or sole proprietor could violate the TCPA with impunity, an absurdity the law does not embrace.

Now to § 217. The TCPA is part of the Communications Act of 1934, as amended, and the Communications Act contains a *respondeat superior* provision. Section 217 provides that "the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, *acting within the scope of his employment*, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as that of the person*." 47 U.S.C. § 217 (emphasis added). This provision applies when "construing and enforcing the provisions of the Communications Act," including the TCPA. *Reynolds Corp. v. Nat'l Operator Servs., Inc.*, 73 F. Supp. 2d 299, 305 (W.D.N.Y. 1999).

4

District courts across the country have consistently invoked this provision to apply to employees and corporate officers who have direct, personal involvement in the illegal conduct at issue, and held that the "person" language in § 217 applies to all persons, including corporate officers and employees. *E.g.*, *Shelton*, 2025 WL 817485, at *6; *Williams*, 2019 WL 4246570, at *4; *Am. BlastFax*, 164 F. Supp. 2d at 897; *Universal Elections*, 787 F. Supp. 2d at 415-16; *Covington & Burling*, 2003 WL 21384825, at *6-*7.

The Eastern District of Pennsylvania recently applied this principle in circumstances substantively identical to those alleged here. In *Shelton*, an individual TCPA defendant moved to dismiss on the same theory that the TCPA does not reach individual employees. The Court rejected the argument:

> Defendant Wilson argues that she may not be held liable under the TCPA. But her position ignores the plain text of the statute. Section 217 of the TCPA states: "In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, *acting within the scope of [her] employment*, shall in every case also be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." (emphasis added). Plaintiff alleges that Ms. Wilson was directly involved in the communications with him, using her personal cell phone, a claim that falls within the literal terms of Section 217.
>
> [A] broad reading of *City Select* is untenable. There, the defendants were a business consulting company that sent a series of faxes, as well as the president and owner of the company. *Id.* at 156. There was conflicting evidence as to the personal involvement of the president, and the sole issue on appeal was whether the trial court properly charged the jury about the standard for imposing liability on a corporate officer. *Id.* at 161-62. *City Select* simply did not address the type of claim raised here and certainly

cannot be read as repealing the clear language of the statute that creates liability for direct personal involvement.

*Shelton*, 2025 WL 817485, at *6 (emphasis original). The parallel to this case is exact. The Plaintiff alleges precisely the "direct personal involvement" that the *Shelton* Court held sufficient. Specifically, the Plaintiff alleges that Ms. Orozco was directly involved in the communications with him. She came on the line on April 3, 2025, identified herself by name and by Credit & Debt, pitched Credit & Debt's services, emailed Plaintiff, and then, critically, personally called him back from an invalid caller ID and refused to process the Plaintiff's do not call requests. That is direct involvement "fall[ing] within the literal terms of Section 217." *Id.*

*Shelton* is not an outlier. The Plaintiff's allegations as to Ms. Orozco mirror, and in fact greatly exceed, those in *Spurlark v. Dimension Serv. Corp.*, No. 2:21-CV-3803, 2022 WL 2528098, at *5 (S.D. Ohio July 7, 2022), where the court imposed personal liability on an individual alleged to be "in charge of [the company's] telemarketing" and "personally liable for the acts alleged in the Complaint pursuant [to] 47 U.S.C. § 217."

And direct personal liability under the TCPA is not limited to specific affirmative actions but to omissions as well, as the plain text of § 217 makes clear ("act, omission, or failure"). In *Montelongo v. My Fin. Sols. LLC*, the plaintiff sued a call centre employee who did not place the plaintiff on a do not call list when requested to do so and the employee's manager who was responsible for

6

"developing strategies to make unsolicited telemarketing calls" and "receiving, maintaining, investigating and responding to complaints about TCPA violations." 2020 WL 210814, at *3 (W.D. Tex. Jan. 14, 2020). The court refused to dismiss the case on the basis that individual liability was insufficiently pled. The Plaintiff's allegations here mirror, and in fact exceed, the level held sufficient in *Montelongo*. Ms. Orozco is alleged not only to have closed the sale, but also to have failed to honor the Plaintiff's TCPA complaint by disconnecting the call and playing music, and to have both called back and caused her supervisor to call back, again illegally, with a spoofed caller ID.

The Third Circuit's holding in *City Select* illustrates that the governing standard is met here. A person "may be personally liable under the [statute] if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved." *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 162 (3d Cir. 2018) (quoting *Am. BlastFax*, 164 F. Supp. 2d at 898). *City Select* dealt with a corporate officer's liability under the TCPA, but it makes clear that the standard is disjunctive, applying equally both to individuals who "actually committed the conduct that violated the TCPA" as well as those who "actively oversaw" such conduct. *Id.*

The Plaintiff has plausibly alleged that Ms. Orozco did both.

7

Specifically, the FAC alleges that Ms. Orozco: (a) Personally placed a call to the Plaintiff from a "spoofed" caller ID. (FAC ¶ 63-64); (b) Personally pitched the Defendant's services, including by personally looking up the fake SSN Plaintiff provided and personally emailing the Plaintiff about the Defendant's services. (FAC ¶ 56-62, 70-71); (c) Personally directed the TCPA violative conduct. (FAC ¶ 79); (d) Personally took responsibility for the calling conduct. (FAC ¶ 80); (e) Was operating on the same calling and customer information system as the upstream prerecorded robot and was passed the same information that was fed to the robot (FAC ¶ 57); and (f) caused, through her interaction with the Plaintiff, the placement of a further illegal call by her supervisor, also from a spoofed caller ID, in which the supervisor admitted to using a prerecorded voice. (FAC ¶ 68). All these allegations tie Ms. Orozco and Credit & Debt directly to the unlawful prerecorded calling at the heart of this case.

Each of those allegations, and certainly all of them taken together, is sufficient to impose personal liability under § 217. *See Spurlark*, 2022 WL 2528098, at *4-*5. Each is direct, personal participation under the standard articulated by every court to have considered the issue after *Am. BlastFax*. The relevant inquiry is direct personal participation. As the Third Circuit explained in *City Select*, the plaintiff must allege specific "conduct" that the defendant had "direct, personal participation" in. 885 F.3d at 157-58. The FAC alleges that.

8

Ms. Orozco's sole contrary authority on this point, *Black v. First Impression Interactive*, actually supports the Plaintiff. In *Black*, the Court held that an individual who "authorizes" a phone call "does not merely aid and abet that phone call but rather is the "person" who actually decides that the phone call should be made. Indeed, the [person's] decision that the call should be made is effectively the act of making it. . . . Just because the [person] does not use his own hands to make the call does not change the fact that the [person] decided that the call should be made and caused it to happen." No. 21 C 3745, 2022 WL 169652, at *4 (N.D. Ill. Jan. 19, 2022). The Plaintiff alleges that Ms. Orozco did far more than authorize. She took the transfer from the illegal robot, personally pitched the Defendant's products, refused to place the Plaintiff on Defendant's DNC list, placed the first callback herself, and triggered the second callback from her supervisor.

Critically, the Plaintiff is not asking this Court to impose corporate officer or "captain of the ship" liability on Ms. Orozco. Whatever the boundaries of corporate officer liability under *City Select* and its progeny, this case sits squarely outside that issue. The Plaintiff seeks to impose personal TCPA liability on Ms. Orozco not as the captain of the ship, but as an individual pirate and part of the boarding party that boarded the targeted vessel. Ms. Orozco is alleged to have personally accepted a transfer from a highly illegal robot, personally continued to sell the Plaintiff Defendant's services, personally refused to accept the Plaintiff's

9

Do Not Call request, personally sent an email continuing to attempt to sell the Defendant's services, personally placed a call from a spoofed caller ID, and personally triggered a call back from her supervisor.

Moreover, Ms. Orozco is liable because she is the "user" of a common carrier service. Every TCPA violative call alleged in the FAC was placed through a telephone carrier engaged in interstate communication, 47 U.S.C. § 201(a), including the spoofed callback she personally placed to the Plaintiff. (FAC ¶ 63-64, 82 (identifying carriers of record)). Ms. Orozco is plainly a "user" of common carrier services under the Communications Act. As the Court in *Shelton* correctly held, both users and employees of users of common carrier services fall "within the literal terms of Section 217." 2025 WL 817485, at *6.

Finally, the breadth of § 217 is unsurprising in light of analogous personal participation provisions throughout the U.S. Code. As the Third Circuit observed in *City Select*: "[T]he United States Code abounds with examples of Congress expressly authorizing personal-participation liability or something quite like it. For example, corporate antitrust violations are 'deemed to be also that of the individual directors, officers, or agents … who shall have authorized, ordered, or done any of the acts constituting in whole or in part such violation.'" 885 F.3d at 161. Section 217's text, reaching "the act, omission, or failure of any officer, agent, or other

10

person acting for or employed by any common carrier or user," is at least as broad. The FAC pleads facts squarely within that scope.

B. *The Plaintiff has alleged that Ms. Orozco personally initiated and participated in the calls and other TCPA-violative conduct.*

Defendant's central defense, that Ms. Orozco was a mere employee answering a transferred call, fails for three independent reasons.

*First*, even accepting the transfer narrative regarding the first call *arguendo*, direct TCPA liability does not require physical dialing. Direct liability extends not only to one who "takes the steps necessary to physically place" a call, but also to one "so involved in" the placement that the person essentially made the call itself. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014). That is the very standard *Murray v. Choice Energy*, the case the Defendant cites, articulates. No. 1:15-CV-60, 2015 WL 4204398, at *3 (S.D. Ohio July 10, 2015). The FAC alleges far more than a "minor role" in the causal chain. It alleges that Ms. Orozco was on the same calling and customer information system as the prerecorded robot and verification agent, that she had the information fed to the robot at her fingertips when she came on the line, and that she was the company's designated "closer" in a multi-step transfer train. The FAC also alleges that Orozco immediately pitched Credit & Debt's services, emailed the Plaintiff, and that she

11

then personally placed a spoofed callback to the Plaintiff. That is "so involved" direct participation, full stop.

At all times relevant to the telephone calls alleged herein, Orozco was acting as an employee, agent, representative, and/or salesperson of Credit & Debt, within the course and scope of that relationship, and for the purpose of advertising, promoting, offering, or selling Credit & Debt's services. Accordingly, the acts, omissions, and failures of Orozco alleged herein are attributable to Credit & Debt, and Orozco is separately liable for her own direct participation in the unlawful telephone solicitations.

When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in directing the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (cleaned up); *Univ. Elections*, 787 F. Supp. 2d at 415-16 (D. Md. 2011) ("[I]f an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

12

It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. *See Joy Mgmt. Co. v. City of Detroit*, 455 N.W.2d 55, 58 (Mich. App. 1990) (abrogated on other grounds). The same principle applies with particular force to an employee or agent who personally participates in or continues the unlawful telephone solicitations at issue, as here. Such a person is liable for her own conduct and does not obtain immunity merely because she acted on behalf of a corporate employer who physically initiated the calls and then transferred the calls to them. An actor faced with the choice of willingly continuing illegal activity perpetrated by their employer is personally liable, just as a quality control inspector who allows poisoned foodstuffs to be shipped to market would be.

*Second*, the FAC alleges that Ms. Orozco herself physically placed at least one call, the spoofed and unassigned callback. She placed that call. It was not transferred to her. Even on the Defendant's own theory of personal TCPA liability, which limits direct liability to those who physically place a call only, that single allegation is sufficient to defeat dismissal. Defendant's motion essentially ignores this call, dismissing the FAC's callback allegations in a footnote in a reference to an "established business relationship." Notwithstanding the fact that an EBR is a fact-bound affirmative defense that has no place at the pleading stage, that footnote

13

is foreclosed not only by the Plaintiff's allegations that he never consented, never inquired, and never sought any service from Credit & Debt but also that he explicitly asked why he was receiving such illegal calls, which simply resulted in Ms. Orozco hanging up on him and playing him hold music. Moreover, an EBR is only an affirmative defense to the Plaintiff's Do Not Call claims. It does not apply to the Caller ID claims, nor to the prerecorded call claims in Section 227(b).

At no time had Plaintiff released his phone number to Defendant so as to have given invitation or permission to be called at his number. The FCC has declared that a necessary element for a person to provide "consent" is that the person must knowingly and voluntarily provide the telephone number at which the person is authorizing telemarketing calls to be received.  For example, capturing a caller's telephone number by a Caller ID or ANI device cannot be considered consent to receive telemarketing calls. Residential *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992) [hereinafter "1992 Rules]. The FCC has further declared that persons who *knowingly release* their phone numbers have in effect given their invitation or permission to be called at the number which they have given, *if the caller is making calls within the scope of the consent given*, and absent instructions to the contrary. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8028 (2015) [hereinafter 2015 Rules]. Here, as

14

outlined above, nobody obtained any consent from Mr. Dobronski, and in fact acted contrary to his explicit stated instructions.

Relatedly, for purposes of an "established business relationship," the FCC has declared that a consumer inquiry cannot be considered to create a business relationship where the consumer's number has been captured absent that consumer's express invitation or permission to be contacted at the captured number, must be voluntary, and "cannot be formed solely on the basis of a prior solicitation" *1992 Rules*, 7 F.C.C. Rcd. at 8771, 8771 n.65, n.67. The Complaint does not plead, and the Motion to Dismiss certainly advances no contrary facts, tending to show that Mr. Dobronski ever provided any express invitation or permission. Consent cannot be presumed. The TCPA and the Commission's rules plainly require *express* consent, not implied or presumed consent. *2015 Rules*, 30 FCC Rcd. at 7991. On this point, the FCC has declared that "[p]urporting to obtain consent during the call . . . does not constitute the *prior* consent necessary to deliver the message in the first place, as the request . . . is part of the telemarketing call." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14099 (2003) (emphasis original). The TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented. Rather, the TCPA places responsibility on the caller alone to ensure that he or she has valid consent for each call made, and to honor opt out requests when

15

they are made. *2015 Rules*, 30 FCC Rcd. at 8004. Ms. Orozco failed to do so by failing to verify the Plaintiff's Do Not Call registration status when she accepted the illegal call transfer, and continued to fail to so do when she hung up on Plaintiff and played him hold music when he inquired why he was receiving robocalls.

*Third*, the very premise of Defendant's transfer argument, that the robot and "Jacob" were unrelated third parties from whom the call was merely "transferred" to Ms. Orozco, is a factual assertion that contradicts the FAC and must be rejected at the Rule 12(b)(6) stage. That notwithstanding, the transfer itself proves the requisite involvement in the illegal conduct at issue sufficient for a finding of personal liability. One who had no role in initiating or orchestrating TCPA violative conduct would expect to question why they are receiving call transfers from some randos. But Ms. Orozco did not, instead going to work with the Plaintiff's information and pitching Plaintiff the Defendant's services, doubtlessly as she did to thousands of victims (most of whom are putative class members) before she spoke with Plaintiff.

And the FAC's allegation that Ms. Orozco had such information at her fingertips is logically incompatible with Defendant's narrative. If the robot and "Jacob" were unrelated third parties calling on behalf of some other entity, how is it that Credit & Debt's closer, Ms. Orozco, had the Plaintiff's customer information record in front of her? The only plausible answer is that they were all working off

16

Credit & Debt's own calling and customer information system. The Defendant's competing inference is implausible on its face. At minimum, it is a factual dispute that cannot be resolved on a Rule 12(b)(6) motion.

With those three independent grounds laid out, the remaining hodgepodge of arguments pertaining to Defendant's transfer argument are easily disposed of. First, Ms. Orozco also committed TCPA violations for which she is personally liable by hanging up on the plaintiff and playing him music when Plaintiff inquired as to why he was being called illegally. Second, the FAC alleges in no uncertain terms that the Plaintiff received a call back from Orozco, as outlined above. That allegation alone forecloses dismissal, and the failure to provide the date (which was on the same day, as is reasonably evident from the pleading of "then"), that allegation easily meets Rule 8's standard, as it pleads the "who" ( Orozco), "what" number (616-239-4728), "how" (spoofed number), and "why." Federal pleading does not require more.

And, as outlined above, Defendant's footnoted argument that the call cannot violate the TCPA because of a supposed "established business relationship" is meritless. *First*, the Plaintiff effectively attempted to revoke and terminate any such relationship when he began pressing Orozco about the illegality of the pre-recorded call, which resulted in Orozco illegally hanging up on him. That notwithstanding, no inquiry ever occurred because the Plaintiff never consented to

17

calls or inquired about anything. Plaintiff's only "inquiry" was as to why he was receiving illegal calls selling Credit and Debt's services.

The FAC also alleges that Ms. Orozco was "so involved" in the upstream calling sequence that she essentially made those calls herself. She was the closer. She had the Plaintiff's information at her fingertips from "Jacob," the upstream verification agent, demonstrating that she and "Jacob" (and the robot) were operating on the same system. She immediately pitched Credit & Debt's services. After the call, she emailed the Plaintiff. As this Court explained just months ago in another case involving Mr. Dobronski, "[i]f a caller's self-identification cannot be taken as an indication of their identity at the pleading stage, a nigh insurmountable barrier would be erected against recovery for consumers under the TCPA." *Dobronski v. CHW Grp., Inc.*, No. 24-CV-11649, 2025 WL 2426370, at *4 (E.D. Mich. Aug. 21, 2025), *motion to certify appeal denied*, No. 24-CV-11649, 2025 WL 3068732 (E.D. Mich. Nov. 3, 2025). Ms. Orozco identified herself, gave her full name when asked, and continued to identify herself with Credit & Debt by email immediately after the call. That is the antithesis of a defendant unconnected to the calling conduct.

The case law on transferred calls cited by Ms. Orozco is inapposite. Ms. Orozco relies heavily on *Cunningham* and *Barnes*, but those cases do not help her. In each, the plaintiffs alleged nothing more than a prerecorded message from one

entity followed by a transfer to an unrelated employee, with no allegations connecting the upstream call to the downstream entity. Here, by contrast, the Plaintiff alleges a tight evidentiary connection. Not only does the Plaintiff allege that "Debt Relief Group" is a fictitious name used by Credit & Debt, but Plaintiff also alleges that Ms. Orozco, who herself identified herself as from Credit & Debt, had the Plaintiff's information from the upstream agents, which strongly cuts against the contrary inference of the involvement of some unrelated third party.

As another court has explained, the Plaintiff is entitled to take Ms. Orozco and her supervisor at their word: "After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is. So too as to the December 8 call. The caller allegedly introduced herself as "Erica ... from [the Defendant]." Id. ¶ 70. Why then would it not be plausible to conclude that she was, in fact, "Erica ... from [the Defendant]"?" *Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 646 (D.N.J. 2025). And yet another court has held that allegations connecting calls to a defendant through the use an email from the defendant's domain "effectively connect[ed] the dots between the phone numbers and 'fictitious' individuals and how they trace back to Defendant." *VanderSloot v. Charles Baratta LLC*, No. 24-CV-07096 (JMW), 2025 WL 1898929, at *8 (E.D.N.Y. July 9, 2025). The same connecting is present here, with respect to Credit & Debt and Ms. Orozco.

19

As outlined in the Plaintiff's opposition to Defendant Credit & Debt's motion, the cases Ms. Orozco cites in support of dismissal are easily distinguishable from the Plaintiff's allegations, as they all involved missing links between the call and the defendant. This is nothing like Plaintiff's concession that he lacked knowledge of the callers in *Russo*. Indeed, this case is far closer to (and materially identical to) *CHW Grp.*, *supra*, and *Dobronski v. Daraujo*, No. CV 25-10169, 2025 WL 3908484 (E.D. Mich. Dec. 1, 2025), all of which denied nearly identical motions to dismiss. The FAC pleads the missing links here. The FAC alleges that Orozco identified herself as with Credit & Debt, had the upstream information Plaintiff provided to the robot and verification agent, continued the sales pitch, sent a Credit & Debt email, called Plaintiff back, and involved her supervisor when Plaintiff called Credit & Debt asking for Orozco.

Finally, Orozco's suggestion that the spoofed caller IDs sever the chain of traceability is both legally wrong and logically suspect. The Plaintiff cannot be expected to plead that the caller IDs belonged to Ms. Orozco or Credit & Debt because Plaintiff alleges that they were deliberately spoofed, which is itself an independent TCPA violation. This Court already rejected a similar argument in *CHW*, reasoning that such information would be in Defendants' possession, particularly given its apparent involvement in the transfer process as the Plaintiff has pled. 2025 WL 2426370, at *4. A telemarketer whose product is anonymity *by*

20

*design* cannot hide behind its own obscurity and dishonesty to defeat pleadings. Moreover, the Plaintiff received an email confirming both Ms. Orozco's identity and her association with Defendant Credit & Debt. That is the factual enhancement that was missing in Defendant's own authorities and confirms the pleading's adequacy here. To the extent that Orozco contends she did not place the calls, she is uniquely in a position to address that theory, as only she possesses any alternative evidence. A plaintiff is required to plead facts giving rise to the plausible inference of personal liability. That has been done here.

C. *Defendant's vicarious liability argument misapprehends Plaintiff's theory and inverts the agency analysis.*

Orozco's second argument is that the FAC does not allege any facts to support an agency relationship between Ms. Orozco and the purported caller. That argument asks the wrong question, demands the wrong showing, and points the agency inquiry in the wrong direction. Plaintiff's theory is simple. Credit & Debt placed the calls through its own telemarketing operation, using its employees, systems, and sales processes, and Ms. Orozco personally participated in that same unlawful calling scheme.

The Plaintiff is not pleading that Ms. Orozco is vicariously liable for the acts of the robot, "Jacob," or any other upstream participant. The Plaintiff's theory, articulated throughout the FAC and above, is that Credit & Debt placed the calls *directly*, through a coordinated sequence of its own agents and employees: a robot,

21

"Jacob," the verification agent, and Ms. Orozco, the "closer." Each individual is personally liable for the calls in which she or he personally participated, by operation of 47 U.S.C. § 217 and the *Am. BlastFax / City Select / Shelton* line of authority discussed above. There is no missing agency link in the Plaintiff's pleading because the pleading does not depend on one.

Orozco's argument is the analytical equivalent of insisting that an employee defendant in a wage and hour case has failed to allege that *she* is the principal of her corporate employer. The TCPA vicarious liability cases Orozco invokes all ask whether a *corporate defendant* exercised sufficient control over an *outside* lead generator or telemarketer to be vicariously liable for that outside party's conduct. That doctrine has *nothing* to say about whether an employee acting within the scope of her employment can be personally liable for her own participation in unlawful calls under § 217. The latter question is answered by the statute itself.

The "essential ingredient" of control on which Orozco relies confirms the point. Control in this doctrine runs from principal to agent. Applied here, the doctrine tests whether Credit & Debt controlled Ms. Orozco, a question whose answer is obviously yes, since she is its employee. As a matter of black letter agency law, "[a]n employee is generally considered an agent of his or her employer." *Schuette v. Rand*, No. 18-10497, 2020 WL 7664775, at *14 (E.D. Mich. Dec. 23, 2020) (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162

22

(11th Cir. 1993)); *see also Shager v. Upjohn Co.*, 913 F.2d 398, 404 (7th Cir. 1990) ("[A]ll employees are agents, but not all agents are employees."); Restatement (Second) of Agency § 2.

Agency cannot be flipped on its head to require the Plaintiff to plead that Ms. Orozco was *herself* the principal of the upstream callers. The Plaintiff has not pled, and is not required to plead, that Ms. Orozco is anyone's principal. She is alleged to be Credit & Debt's employee, a § 217 "person . . . employed by" a "user" of common carrier services, and personally liable for her own acts and omissions under both the statutory text and the personal participation standard of *Am. BlastFax*, *City Select*, and *Shelton*.

Tellingly, the structure and much of the wording of Orozco's Section B tracks Credit Swag's pending Motion to Dismiss almost verbatim. Whatever traction that boilerplate analysis has when deployed by a corporate defendant disputing its vicarious liability for an outside telemarketer, and the Plaintiff's prior Opposition explains why it has none even there, it provides no defense to a § 217 personal liability claim against the very employee whose own conduct is alleged. Importing the corporate vicarious liability framework into the employee personal liability context simply reveals that the framework does not fit.

For these reasons, Orozco's vicarious-liability arguments are not responsive to the claim actually pled and provide no basis for dismissal. Whatever further

23

granular details of the principal-agent relationship between Ms. Orozco and Credit & Debt the Defendants wish to develop are irrelevant since, as a matter of well-established agency law, an employee is an agent of their employer. To the extent that Orozco disputes those facts, those are matters for discovery, not for Rule 12(b)(6).

   D. *Defendant Orozco's joinder to Credit & Debt's MTD fails for the reasons set forth in Plaintiff's Opposition.*

Defendant Orozco "joins" Defendant Credit Swag's Motion to Dismiss in its entirety. The Plaintiff has already filed a comprehensive Opposition to that Motion and incorporates each of those arguments by reference here. In summary, and as more fully set out in his Opposition, the Plaintiff has alleged direct liability against Credit & Debt (and, derivatively, Ms. Orozco) with greater specificity than this Court has previously held sufficient. The Plaintiff has alleged far more than one telephone solicitation within a twelve-month period, including from Ms. Orozco her very self. Next, the Plaintiff has pled, and recent law holds, that there is a private right of action for caller ID violations of 47 C.F.R. § 64.1601(e). Finally, the Plaintiff has adequately argued that Ms. Orozco acted knowingly, and that the Plaintiff has injunctive relief. Finally, the class allegations are not failsafe and should not be struck. Moreover, to the extent that Ms. Orozco claims that any of the foregoing issues incorporated by reference somehow applies to her in some different manner than Credit & Debt, Ms. Orozco has waived such argument by

24

failing to plead the same. *See, e.g.*, *Wallace v. Fortune Hi-Tech Mktg., Inc.*, No. CV 5:11-127-GFVT, 2015 WL 12977342, at *4 (E.D. Ky. Mar. 26, 2015) ("simply referencing a motion previously filed by a different defendant is insufficient to satisfy the Aguilars' duty to respond to the Complaint in this context"); *Gottron v. Comm'r of Soc. Sec.*, No. 3:22-CV-123, 2022 WL 17717498, at *7 n.15 (N.D. Ohio Oct. 5, 2022) ("To the extent that Gottron raised issues unsupported by any argument, those issues are waived." (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995-996 (6th Cir. 1997))); *Speicher v. Hill*, No. 3:21-CV-01341-JG, 2024 WL 6082609, at *19 (N.D. Ohio Mar. 25, 2024) (dismissing claims that merely "incorporat[ed] by reference the facts he alleged in his prior two grounds for relief"). To the extent Ms. Orozco offers any independent argument by joinder, they fare no better than Credit Swag's arguments as she has not articulated them with specificity. Her joinder should be denied for the same reasons.

## CONCLUSION

This Court should deny Defendant Denise Orozco's Motion to Dismiss in its entirety. Alternatively, to the extent the Court finds that any deficiency exists in the FAC, the Court only need give the order granting the Plaintiff leave to amend and he will do so to rectify any perceived deficiency.

25

Dated: May 13, 2025

/s/ *Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

May 13, 2026

/s/ *Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

26