UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK DOBRONSKI,

Plaintiff,

v.

CREDIT SWAG VENTURES, INC.,
DBA CREDIT & DEBT, *et al*,

Defendants.
_________________________ /

Case No. 25-11777

F. Kay Behm
United States District Judge

**OPINION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS (ECF No. 14, 25)**

## I. PROCEDURAL HISTORY

On June 12, 2025, Plaintiff Mark Dobronski filed this proposed class action suit against Defendant Credit Swag Ventures, Inc. DBA Credit & Debt, asserting violations of the Telephone Consumer Protection ACT (TCPA). (ECF No. 1). Credit & Debt filed a motion to dismiss (ECF No. 10), and the court entered an order allowing Plaintiff the option of filing an amended complaint. (ECF No. 11). Plaintiff filed an amended complaint on September 8, 2025, and added Defendant Denise Orozco, an employee of Credit & Debt. (ECF No. 12). Credit & Debt then filed a motion to dismiss the Amended Complaint. (ECF No. 14). The motion is fully briefed. (ECF Nos. 16, 17). Defendant Orozco has

also filed a motion to dismiss the Amended Complaint, which is fully briefed and which joins Credit & Debt's motion. (ECF Nos. 25, 27, 29). The court held a hearing on September 17, 2026. For the reasons set forth below, the court **GRANTS** in part and **DENIES** in part Credit & Debt's motion to dismiss and **GRANTS** Orozco's motion to dismiss.

## II. FACTUAL BACKGROUND

Credit & Debt is a seller of various credit and debt relief services and loan products. (ECF No. 12, ¶ 27). To generate business, Defendants place illegal telemarketing calls to numbers on the National Do Not Call Registry, including using illegal prerecorded calls. *Id*. at ¶ 28. Dobronski's residential telephone number has been listed on the National Do Not Call Registry since June 29, 2003. *Id*. at ¶ 35. Dobronski has never been a customer of Defendants, never done business with them, and never inquired to be a customer of Defendants. *Id*. at ¶ 36. Dobronski never consented to receiving calls or text messages from Defendants. *Id*. at ¶ 37.

On April 3, 2025, Dobronski received at least five calls from Credit & Debt from various caller IDs, including "spoofed" or non-existent numbers. (ECF No. 12, ¶ 38). At least one of the calls placed by Credit & Debt to Dobronski used an artificial voice. *Id*. at ¶ 40. More specifically, on April 3,

2025, Dobronski received a call from Credit & Debt where the caller identified itself as "Jessica" from the illegally and fictitiously named "Debt Relief Group." *Id*. at ¶¶ 41-42. "Jessica" is Credit & Debt's robot. *Id*. at 44. When Dobronski answered the call, he said "Hello," "Jessica" said "Hello," paused for almost 5 seconds, and then repeated, "Hey!, This is Jessica from the Debt Relief Group. How are you doing today?" *Id*. at ¶ 45. Dobronski then intentionally responded in a vulgar manner to prove that "Jessica" was not a real person. *Id*. at ¶ 43. "Jessica" disregarded the vulgar response and stated "I got your information for debt settlement and it seems like you might be eligible for a program that could lower your debt. Do you currently owe more than ten thousand in debt?" *Id*. at ¶ 46. Dobronski responded in a vulgar manner and "Jessica" continued with its scripted playback. *Id*. at 47. Dobronski responded "yes" and then "Jessica" transferred the call to "Jacob" who was obviously human. *Id*. at ¶¶ 49-50.

Dobronski then spoke with "Jacob" who stated he was from the "Debt Relief Group," an illegal and fictitious name for Credit & Debt used by its front-line "verification" agents to avoid detection and ill will for their brand. (ECF No. 12, ¶ 51). "Jacob" asked Dobronski a serious of questions about his debt and demographic information and then stated he was going to transfer the call

to the "debt specialist" who would assist him and complete the process. *Id*. at ¶¶ 53-54. Defendant Orozco joined the call and identified herself as being from Credit & Debt. *Id*. at ¶ 55. Although Orozco asked Dobronski more questions about his debt status, demographic and personal information, she already had the information Dobronski provided the robot and "Jacob," indicating that the calls were from the same place. *Id*. at ¶¶ 56-57. Knowing Defendant's actions were illegal, Dobronski provided fake information to protect his identity. *Id*. at ¶ 58. When Orozco looked up the fake social security number he provided, she informed Dobronski it was assigned to a deceased person, and he would have to contact a credit bureau to get it resolved. *Id*. at ¶ 59. Dobronski asked for, and received, Orozco's full name. *Id*. at ¶ 60.

When Dobronski began to press Orozco about the illegality of the pre-recorded call from "Jessica," the call was disconnected and music began to play. (ECF No. 12, ¶ 61). Dobronski then received an email from Orozco at a Credit & Debt email address. *Id*. at ¶ 62; ECF 12-1, Ex. A. Orozco then called Dobronski from a "spoofed" phone number. *Id*. at ¶¶ 63-64. Dobronski expressed his dissatisfaction with the previous call, indicated that he intended to file a lawsuit, and would like a follow-up from Orozco's supervisor.

*Id*. at ¶ 65. After not hearing from a supervisor, Dobronski called Credit & Debt and spoke with Orozco, who said she would follow up with her supervisor again. *Id*. at ¶¶ 66-67. The supervisor called Dobronski from a "spoofed" number and admitted to using a pre-recorded voice. *Id*. at ¶ 68. On information and belief, Credit & Debt uses bogus names like "Debt Relief Group" for its frontline agents so that customers are more likely to stay on the call and provide their personal information in the hopes that they might become free of debt and then employees like Orozco make the formal sales pitch for Credit & Debt's products. *Id*. at ¶ 70. Credit & Debt uses automated technology to place the calls and lower paid information gathering employees like Jacob to collect personal information and gauge customer interest before transferring the call to a higher-paid "closer" like Orozco. *Id*. at ¶ 71. The initial prerecorded calls, the transfers to live agents, and the callback were all Credit & Debt telemarketing interaction designed to induce purchase of Credit & Debt's services. *Id*. at ¶ 73.

The calls at issue all came from three phone numbers that Defendants appear to have "spoofed" to unassigned numbers or numbers assigned to innocent third parties, to further hide their location. (ECF No. 12, ¶¶ 82-83). Additionally, the three phone numbers do not permit the caller to call the

number and lodge a do not call request during regular business hours nor will anyone calling or texting those numbers receive alternate numbers at which to lodge a do not call request. *Id*. at ¶¶ 84-85.

Plaintiff also proposes the following Class definitions:

> **Robocall Class**: All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their residential telephone or any other protected telephone service (3) from or on behalf of the Defendants (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

> **National Do Not Call Registry Class**: All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

> **Telemarketing Caller ID Class**: All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendants' or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business

> hours, (4) within the four years prior to the filing of the Complaint.

*Id*. at ¶ 94.

## III. ANALYSIS

### A. Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the court "must construe the complaint in the light most favorable to the [nonmoving party] … [and] accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as

"when an affirmative defense … appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted). A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable"); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance … dismissals based on a judge's disbelief of a complaint's factual allegations"). Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged." *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

B. Did Plaintiff Sufficiently Allege Direct Liability Against Credit & Debt?

Defendant argues that the Amended Complaint fails to plausibly allege that Defendant itself, as opposed to some unidentified third party, called him directly. And, according to Defendant, direct TCPA liability only applies to persons or entities that "initiate" telemarketing calls. "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however

minor, in the causal chain that results in the making of a telephone call." *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *3 (S.D. Ohio July 10, 2015) (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 F.C.C Rcd. 6574, 6583 ¶ 26). Defendant argues that merely alleging that a defendant made or initiated a call is not sufficient to allege a direct TCPA liability claim. Here, according to Defendant, Plaintiff has not alleged any facts from which to infer that any of the calls were physically initiated by Defendant. Defendant contends that Plaintiff's conclusory allegations that the calls were "placed by the Defendant" or came "from the Defendant" are insufficient to avoid dismissal. Plaintiff alleges that during one call he spoke with two different persons from a company using the name "Debt Relief Group" before he was transferred to an individual by the name of "Denise," who "identif[ied] herself as being from Credit & Debt." (ECF No. 12, ¶ 55). Defendant argues that these allegations support the conclusion that a third-party and not "Credit & Debt" made the initial outbound call. And, according to Defendant, Plaintiff's allegation that he received a "C&D Intro Email" does not change this result because the email was received after Plaintiff was transferred to "Denise" with "Credit & Debt." (ECF No. 12, ¶ 62, Ex. A).

The TCPA is a remedial statute that should be construed broadly to benefit consumers and, thus, "should be liberally construed and should be interpreted (when that is possible) in a manner tending to discourage attempted evasions by wrongdoers." *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 597–98 (M.D. Tenn. 2018) (citation omitted); *see also Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 909 (W.D. Mich. 2018) ("The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls … [therefore,] it should be construed to benefit consumers." (citation omitted)). While Defendant argues that the allegations show that a different entity (Debt Relief Group) placed the robocall, drawing all reasonable inferences in Plaintiff's favor, the court finds that it is plausible that Credit & Debt initiated the call. More specifically, while the robot Jessica and Jacob both identified themselves as from Debt Relief Group, the Amended Complaint alleges that when Orozco (who identified herself as being from Credit & Debt) came on to the call, she had the information provided to both Jessica and Jacob, which plausibly suggests that all three are from the same entity. Given that Orozco followed up the call with an email from Credit & Debt, the allegations plausibly suggest that all three "persons" on the call were from Credit & Debt. *See e.g.*, *Workman v. CarGuard Admin.*

*Inc.*, No. CV-23-00961-PHX-DLR, 2024 WL 249160, at *2 (D. Ariz. Jan. 23, 2024) (Plaintiff followed the pre-recorded prompts, was then connected to the first individual, who then connected plaintiff to another individual, who emailed plaintiff a vehicle services contract from defendant; "These facts create a plausible inference that Defendant directly placed the calls at issue, and so Plaintiff has stated a claim of direct liability under the TCPA."). Additionally, the supervisor with whom Dobronski spoke admitted to using a prerecorded voice, which plausibly suggests that robot Jessica is the prerecorded voice used by Credit & Debt. The foregoing factual allegations sufficiently support Dobronski's allegation, based on information and belief, that Credit & Debt uses bogus names like "Debt Relief Group" for its frontline agents. *See Smith v. General Motors, LLC*, 988 F.3d 873, 885 (6th Cir. 2021) ("[C]omplaints grounding claims on 'information and belief' can survive a motion to dismiss" if they "'set forth a factual basis for such belief[.]'") (citing *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006)); *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 837 n. 10 (N.D. Ohio 2021) ("Factual allegations based upon information and belief may be sufficient to support a plausible claim for purposes of Rule 12(b)(6) analysis where the factual allegations in the entire pleading allow the Court to draw

the reasonable inference that defendant is liable for the conduct alleged.”). Importantly, “the plausibility standard does not require [the] plaintiff to definitively connect [the] defendants to the calls received.” *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 283 (S.D.N.Y. 2024) (quoting *Zeitlin v. Palumbo*, 532 F. Supp. 3d 64, 71 (E.D.N.Y. 2021)). Nor does it require the plaintiff to disprove the possibility that the robocall was “placed by some independent third party, from which [the defendant] merely purchased the ‘sales lead.’” *Id*. (quoting *Morris v. SolarCity Corp*., No. 15 Civ. 5107 (RS), 2016 WL 1359378, at *2 (N.D. Cal. Apr. 6, 2016)). Here, construing the allegations in the light most favorable to the non-moving party, the court finds that Plaintiff has sufficiently alleged direct liability against Credit & Debt.

C. Did Plaintiff Sufficiently Allege More Than One “Telephone Solicitation”?

A National DNC Registry claim requires Plaintiff to have received “more than one” “telephone solicitation” to access the TCPA’s private right of action under Section 227(c). *See* 47 U.S.C. § 227(c)(5); *see also* 47 C.F.R. § 64.1200(c). “[T]elephone solicitation” is defined as “the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.” 47 C.F.R.

§ 64.1200(f)(15); *see also* 47 U.S.C. § 227(a)(4). According to Defendants, Plaintiff does not plead any facts suggesting that he was actually solicited to purchase Credit & Debt's services during any of the phone calls. As Defendants point out, Plaintiff provides details regarding a single call only and as to that call alleges only that the caller (i.e., "Jessica" from "Debt Relief Group") stated that she "got [Plaintiff's] information for debt settlement" and Plaintiff "might be eligible for a program that could lower [his debt]"; Plaintiff then answered questions about his debt history and "status." (ECF No. 12 ¶¶ 46, 53, 56). Further, Plaintiff does not allege that Denise from "Credit & Debt," ever tried to sell Plaintiff a product or service; instead, he alleges that Denise asked him questions about "his debt status, demographic information along with personal information." *Id*. at ¶ 56. While Plaintiff alleges that the calls were "designed to induce purchase of Credit & Debt services" *id*. at ¶ 73, Defendants argue that this is a conclusion unsupported by facts. Further, the email from Credit & Debt offers Plaintiff *free* membership with Credit & Debt. Thus, Defendants contend that Plaintiff was not encouraged to pay for or purchase anything by any of the people on the call, as required by the TCPA.

In the court's view, Plaintiff has failed to plead sufficient facts to draw an inference that any of the calls, as described in the Amended Complaint, constitute calls for a solicitation or marketing purpose. The TCPA defines "telephone solicitations" as "the initiation of a telephone call or message for the purpose of *encouraging the purchase or rental of, or investment in, property, goods, or services*, which is transmitted to any person ...." 47 U.S.C. § 227(a)(4) (emphasis added). The content of the call as described does not allege that any of the callers tried to sell any products or services. Rather, the description in the Amended Complaint is limited to questions regarding debt status, demographics, and other personal information. The court finds the allegation that the calls were "designed to induce purchase of Credit & Debt services" is conclusory and not sufficiently connected to the description of the actual content of the call. *Compare Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023) (Plaintiff clearly alleged that the calls were for the purpose of encouraging her to purchase a good or service, as required by the statute where she alleged that "Defendant placed calls to [her] on numerous occasions attempting to solicit Plaintiff a home warranty plan that Plaintiff had no interest in" and provided a website to purchase defendant's

products.) *with Gillam v. Reliance First Cap., LLC*, No. 21CV4774JMAJMW, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) (Plaintiff failed to allege sufficient facts from which the court could infer that the purpose of the call was to encourage "the purchase or rental of, or investment in, property, goods or services" where the plaintiff, without any factual support, merely alleged that the defendant's agent solicited refinancing products) *and Gulden v. Consol. World Travel Inc.*, No. CV-16-01113-PHX-DJH, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (Complaint did not survive motion to dismiss where the plaintiff did not describe the content of the calls and merely averred that the calls were made for the purpose of soliciting for the defendant's products or services.). Examining the statements and questions alleged in the conversation, the court finds the present circumstances are more like *Gillam* and *Gulden* and less like *Atkinson*. For these reasons, the court concludes that the Amended Complaint does not sufficiently allege that the calls at issue were "telephone solicitations" as defined by the TCPA.

Further, as recently explained by the Seventh Circuit, a "telephone solicitation" "means the initiation of a call or message for the purpose of persuading or urging someone to *pay* for a service." *Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025) (emphasis added); *see also Trujillo v. Free*

*Energy Sav. Co.*, No. 5:19-cv-02072-MCS-SP, 2020 WL 7768722, at *3 (C.D. Cal. Dec. 21, 2020) (finding no intent to encourage a purchase when text messages only "invite[d] the recipient to schedule free services"). In *Hulce*, the court concluded that the calls and messages at issue were not "telephone solicitations" because they were not initiated with the purposes of persuading or urging anyone to pay for its services. *Id.* This was so because while the purpose was to encourage the plaintiff to *use* the services, "its purpose could not have been to encourage [the plaintiff] to *pay* for services that were free to him." *Id*. at 500. Similarly here, nothing in Dobronski's descriptions of the conversations with Jessica, Jacob, or Orozco suggest that any of them encouraged him to pay for their services. And the email confirms that Plaintiff was offered free membership with Credit & Debt. At most, this suggests encouragement to use their free services.[1] Thus, for this reason as

---

[1] The case of *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 209–10 (S.D.N.Y. 2024) is distinguishable. In *Cacho*, the defendant argued that the plaintiff would not have purchased the defendant's services by entering into the legal representation agreement because any payments to defendant would be satisfied by a third party through a recovery from the federal government. There, the court noted that *Hulce* and *Trujillo* "differ fundamentally from the facts" in *Cacho* because the challenged calls allegedly sought to encourage the plaintiff to contract with the defendant *and* to direct a portion of a future right to payment to the defendant. While those funds would originate from a third party, the calls urged the plaintiff to allocate those funds. "Put differently, by signing the representation agreement, Plaintiff became obligated to provide Defendant a portion of the damages award that Plaintiff received from the government." *Id*. at 210. Here, while Defendant offered its free services to Plaintiff, there are not similar allegations in the

well, the Amended Complaint does not sufficiently allege that the calls at issue were "telephone solicitations" within the meaning of the TCPA. Accordingly, the second count of the Amended Complaint must be dismissed.

D. Is There a Private Right of Action Under § 64.1601(e)?

The parties disagree as to whether there is a private right of action under § 64.1601(e), which provides that any person or entity that engages in telemarketing, as defined in § 64.1200(f)(10)[2] must transmit caller identification information. The court need not resolve this issue because Plaintiff's claim under this section fails for the same reasons as his claims under the National DNC Registry claim. "Telemarketing," like "telephone solicitation," "means the initiation of a telephone call or message *for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services*, which is transmitted to any person." § 64.1200(f)(13)

---

Amended Complaint that any funds or the right to any funds from a third party would be allocated to Defendant. And there is no allegation that by signing up for Defendant's free services, Plaintiff would become obligated to make any payment, directly or indirectly, to Defendant. Accordingly, the court finds the present factual scenario as outlined in the Amended Complaint aligns with *Hulce* and *Trujillo* rather than with *Cacho*.

[2] While § 64.1601(e) cross-references § 64.1200(f)(10), that appears to be a scrivener's error. The definition of "telemarketing" is actually found in § 64.1200(f)(13). Subsection (f)(10) contains the definition of the term "seller."

(emphasis added). Again, with respect to the content of the calls as described in the Amended Complaint, the allegations do not sufficiently allege that they were for the purpose of "encouraging *the purchase* or rental of, or investment in" property, goods, or services. And because the allegations do not suggest that Credit & Debt was offering anything other than free services, the definition of "telemarketing" is not satisfied. Accordingly, even if there is a private right of action under § 64.1601(e), Plaintiff has not stated one here. Accordingly, the third count of the Amended Complaint must be dismissed.

E. <u>Does Plaintiff Sufficiently Allege that Defendant Acted Knowingly or Willfully</u>?

The TCPA allows a court to treble an award of damages under the TCPA "if the fact-finder determines [defendant] 'willfully or knowingly violated' the Telephone Consumer Protection Act." *Weingrad v. Top Healthcare Options Ins. Agency Co*., 2024 WL 4228149, at *5 (E.D. Pa. Sept. 17, 2024) (citing 47 U.S.C. § 227(b)(3)(C)). "[A] willful or knowing violation of TCPA requires that Plaintiff has to plead that Defendant was made aware of/notified that Plaintiff did not consent to calls from Defendant." *Carr v. Credit Acceptance Corp*., No. 25-10985, 2026 WL 297212, at *3 (E.D. Mich.

Feb. 4, 2026) (quoting *Duchene v. Onstar, LLC*, No. 15-13337, 2016 WL 3997031, at *7 (E.D. Mich. July 26, 2016)); *Harris v. World Fin. Network Nat'l Bank*, 867 F.Supp.2d 888, 895 (E.D. Mich. 2012) ("The Court disagrees with Plaintiff's position that, in order to establish that Defendants' conduct was willful or knowing, he must only demonstrate that Defendants intended to use the autodialer to place the calls.... Plaintiff must also show that Defendants knew that Plaintiff did not consent to the phone calls."); *Currier v. PDL Recovery Group, LLC*, No. 14-12179, 2017 WL 712887, at *10 (E.D. Mich. Feb. 23, 2017) (to demonstrate a knowing violation of 47 U.S.C. § 227(b), a plaintiff must show that the defendant knew he or she did not consent to the phone calls).

Case law in the Eastern District of Michigan is clear that something more than a violation of the statute is required to show a willful or knowing violation of the TCPA. Indeed, here, Plaintiff does not plead in the Amended Complaint that he informed Defendants that he did not consent to the calls at issue or that they were otherwise made aware that he did not consent to the calls. The mere fact that the calls were made is not adequate to show a willful or knowing violation sufficient to sustain a claim for treble damages. As Magistrate Judge Patti explained in *Bristow v. Am. Nat'l Ins. Co.*,

"*something more* than a mere violation is required in order to elevate it to a willful or knowing one, lest *every* violation be subject to the treble damage provision of the Act. This District has repeatedly determined that the 'something more' is *actual* knowledge, not mere constructive knowledge, and not a mere violation of the statute." No. 20-10752, 2021 WL 2201171, at *2 (E.D. Mich. June 1, 2021) (emphasis in original). The court is not persuaded that the allegations about Defendant using artificial or prerecorded voice robocall and spoofed caller IDs are sufficient, as the allegations merely suggest violations of the statute, which is insufficient under the foregoing case law. Thus, Plaintiff's claim for treble damages based on knowing or willful violations of the statute must be dismissed.

F. Injunctive Relief

Plaintiff's Amended Complaint seeks the injunctive relief (1) prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future; (2) prohibiting Defendant from using artificial or prerecorded voices to contact residential telephone lines and other protected lines, except for emergency purposes, in the future; and (3) prohibiting Defendant from transmitting inaccurate and non-compliant

caller ID information in the future. (ECF No. 12, PageID.81-82). Defendant argues that the Amended Complaint is devoid of any facts suggesting that Plaintiff has Article III standing to seek injunctive relief as requested. The court first notes that because it has dismissed Counts II and III, the relief requested in categories 1 and 3 above are moot. Thus, the court will address only the injunctive relief sought in category 2.

Defendants argue that to have Article III standing to seek injunctive relief in any federal case, Plaintiff must plead sufficient facts suggesting that there are "continuing, present adverse effects" traceable to Defendant's conduct. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Plaintiff must "demonstrate that [he] is likely to be harmed again in the future in a similar way" by Defendant. *Nicosia v. Amazon*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344–45 (2d Cir. 1998)). To show this, Plaintiff must adequately plead "the threatened [future] injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414, n. 5 (2013) (emphasis deleted and internal quotation marks omitted).

Plaintiff received all the subject calls on the same day in April 2025, about five months before he filed the Amended Complaint. Defendants argue that these allegations do not suggest that there is any ongoing or imminent threat of any future injury. Defendants point out that despite having an opportunity to amend the complaint, the Amended Complaint does not have any allegations regarding any calls that occurred after April 3, 2025. Thus, Defendants argue, no inference can be drawn that there is any real imminent risk of future calls. In response, Plaintiff maintains that he is at risk of future telemarketing calls from Defendants. Plaintiff argues that "Defendant offers no facts or arguments rebutting the risk that they will continue to call, as alleged, nor do they claim to have ceased making them."

As the Supreme Court explained, "[t]he equitable remedy [of injunctive relief] is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]" *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 111 (1983) (citation omitted). Here, the Amended Complaint does not contain any allegations regarding the risk of future calls. In *Atkinson v. Choice Home Warranty*, the court found that the plaintiff alleged facts which, accepted as true, established a sufficient likelihood that the defendant would

call her again in the future where the calls described in the complaint were recurrent and relatively recent and where the defendant continued to call the plaintiff after she repeatedly asked to be removed from the call list. No. CV 22-04464, 2023 WL 166168, at *7 (D.N.J. Jan. 11, 2023). No such similar facts are alleged here. Instead, we have a single day where multiple calls were alleged to have been placed by Defendants, a five-month period of time where no calls are alleged to have been placed, and no allegation that calls were made after Plaintiff asked to be removed from Defendant's call list. The court concludes that the Amended Complaint contains insufficient allegations regarding the risk of future calls. Thus, the motion to dismiss the request for injunctive relief is granted.

G. Motion to Strike Caller ID Class Claim

In the alternative, Defendant argues that the Caller ID class should be stricken under Federal Rules of Civil Procedure 12(f) and 23 as an improper "failsafe" class. A failsafe class is a class that cannot be defined until the case is resolved on its merits and includes only those members who are entitled to relief. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). Here, the court has already determined that the Amended Complaint fails to state a claim under 47 C.F.R. § 64.1601(e)(1). Accordingly,

the proposed class related to this claim must also fail. The motion to strike the class is denied as moot.

H. Liability of Orozco

Plaintiff pleads a theory of direct liability against Orozco. (ECF No. 12, ¶ 77). Section 217 of the TCPA provides that "the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person." 47 U.S.C. § 217. The Amended Complaint contains the following allegations regarding Orozco's personal liability under the TCPA:

> 79. Orozoco [sic] personally directed the TCPA-violative conduct at issue because she placed at least one of the calls directly, as well as being the ultimate individual to whom the call was transferred, and who personally attempted to sell the Plaintiff Defendant Credit & Debt's services, including via subsequent email, after being informed of the calls' illegal nature.
>
> 80. Moreover, Orozoco [sic] personally took responsibility for the calling conduct by promising the Plaintiff that she would forward the Plaintiff's complaints about the illegal calls to her supervisor.
>
> 81. The foregoing facts demonstrate that Orozoco [sic] had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

(ECF No. 12). Defendant argues that the Amended Complaint does not plausibly allege that Orozco physically initiated the calls, which is required for direct liability. "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *3 (S.D. Ohio July 10, 2015). Thus, Defendant argues that Plaintiff must plausibly alleged that Orozco herself physically called him directly.

As to the alleged robocall that was transferred to Orozco from Jacob, the allegations in the Amended Complaint do not suggest that Orozco initiated the call. Even assuming that both Jessica the robot and Jacob were agents of Credit & Debt, the allegations involving Orozco do not indicate that she was so involved in the *placing* of the phone call as to be directly liable for initiating it, such as giving "specific and comprehensive instructions as to timing and the manner of the call." *Murray*, 2015 WL 4204398, at *4 (quoting *In re DISH Network, LLC,* 28 FCC Rcd. 6574 (2013)). Plaintiff points out that the Amended Complaint alleges that Orozco was on the same calling and

customer information system as Jessica and Jacob, that she had the information they collected, and that she was the company's "closer" in a "multi-step transfer train." But these allegations do not support any plausible inference that Orozco *initiated* the robocall call as required. Again, while she was obviously involved in the call, the allegations do not suggest that she was so involved in *placing* the call such that direct liability could be proper.[3] *See Murray*, 2015 WL 4204398, at *4 ("[T]he complaint fails to plead any specific factual allegations to support the legal conclusion that Choice Energy was 'so involved' in placing the calls that direct liability could be proper."). Thus, the claim against Orozco in Count I of the Amended Complaint must fail.

As to the other two calls Orozco is alleged to be involved in, while she is alleged to have placed one of the calls directly, as explained in detail above, neither call is alleged to have involved a telephone solicitation or telemarketing, both of which require "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any

[3] Although Defendants' brief also argues that Orozco cannot be vicariously liable, Plaintiff's Amended Complaint makes clear that he only makes a direct liability claim against Orozco. (ECF No. 12, ¶ 77) ("The Plaintiff also pleads a theory of direct liability as against Defendant Denise Orozoco [sic] as she was personally involved in the placement of at least two of the calls."). Thus, this argument need not be addressed any further.

person." Thus, the TCPA claims against Orozco in Counts II and III of the Amended Complaint fail for the same reasons as they fail against Credit & Debt.

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** in part and **DENIES** in part Credit & Debt's motion to dismiss the Amended Complaint. Orozco's motion to dismiss is **GRANTED**. Defendant Orozco is **DISMISSED**, as are Counts II and III of the Amended Complaint, along with the related class claims. Additionally, Plaintiff's claims for treble damages and injunctive relief are **DISMISSED**. Count I of the Amended Complaint and its associated proposed class action remain and may proceed to discovery.

**SO ORDERED**.

Date: September 18, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge